**Adrienne L. GREEN and Paul L. Green, her husband, Plaintiffs,**

v.

**Noble C. BLOODSWORTH, Defendant.**

Superior Court of Delaware,
Kent County.

Submitted: July 2, 1985.

Decided: Oct. 18, 1985.

A. Richard Barros and Gary L. Smith, of Barros, McNamara & Scanlon, Dover, for plaintiffs.

Robert B. Young, of Young & Sherlock, Dover, for defendant.

RIDGELY, Judge.

This is a civil action brought by Adrienne L. Green and Paul L. Green, her husband ("plaintiffs"), against Noble C. Bloodsworth ("defendant") for money damages arising from personal injuries sustained in an automobile collision. During the course of pretrial discovery, plaintiffs have provided defendant all medical records in their possession, but plaintiffs have refused to execute a medical authorization to permit defendant's counsel to confer directly with plaintiffs' physicians. It is undisputed that the treating physicians are not accessible to defense counsel by informal conference unless an authorization from plaintiffs or the Court is obtained. Defendant has moved the Court for an order which the defendant can present to any health care provider granting permission to provide all medical information and material to defense counsel relating in any way to plaintiffs. Plaintiffs oppose the motion and respond that defendant may depose anyone he chooses and that he may talk to whomever he

chooses, on or off the record, if that person is willing to confer with him.

The law is clear that, by the filing of a personal injury action, plaintiffs waive the physician-patient privilege as to all medical information relevant to the claim. D.U. R.E. 503(d)(3).[1] A contrary rule would lead to injustice and the suppression of the truth. 8 Wigmore, *Evidence* § 2389 (McNaughton rev. 1961); *McCormick on Evidence* § 105 (3d ed. 1984).

 Plaintiffs' refusal to execute an authorization effectively forces the defendant to proceed by formal deposition of the treating physicians. However, the availability of formal discovery devices under the Rules of Civil Procedure does not justify any limitation of informal discovery.

> "Unless impeded by privilege an adversary may inquire, in advance of trial, by any lawful manner to learn what any witness knows if other appropriate conditions the witness alone may impose are satisfied, e.g., compensation for his time and expertise or payment of reasonable expenses involved, and while the Federal Rules of Civil Procedure have provided certain specific formal methods of acquiring evidence from recalcitrant sources by compulsion, they have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a witness who is willing to speak."

*Doe v. Lilly & Company, Inc.*, D.D.C., 99 F.R.D. 126, 128 (1983). It is a costly and inefficient method of producing evidence to require depositions of medical witnesses without knowing in advance whether the testimony will be useful. It is also unfair to require a medical witness to testify be-

fore he has had an opportunity to familiarize himself with the claim or to review the medical record. *Lazorick v. Brown*, App. Div., 195 N.J.Super. 444, 480 A.2d 223, 229 (1984).

Not only is there no express law or rule prohibiting defense counsel from obtaining information from a plaintiff's physician through informal discussion, there is no public policy consideration favoring nondisclosure when no privilege exists. Except for privileges accorded by law, no person has a privilege to "[p]revent another from being a witness or disclosing any matter or producing any object or writing." D.U. R.E. Rule 501(4). Yet plaintiffs' refusal to execute an authorization is, in fact, preventing informal disclosures to defense counsel, and not surprisingly so.

> "The inchoate threat implicit in refusing or qualifying permission to speak to a witness in possession of privileged information operates to intimidate the witness, who is then placed in the position of withholding or divulging what he knows at his peril, and is itself a species of improper influence. It also enables the party so wielding the privilege to monitor his adversary's progress in preparing his case by his presence on each occasion such information is revealed while his own preparation is under no such scrutiny."

*Doe v. Lilly & Company, Inc., supra*, 99 F.R.D. at 129. This Court will not condone the use of the formal discovery rules as a shield against defense counsel's informal access to a witness when these rules were intended to simplify trials by expediting the flow of litigation, *Wileman v. Signal Finance Corporation*, Del.Supr., 385 A.2d 689, 691 (1978), and to encourage the pro-

---

1. D.U.R.E. Rule 503(d)(3) provides for the following exception to the general rule of physician and psychotherapist-patient privilege:

 "(3) **Condition an Element of Claim or Defense.** There is no privilege under this rule as to a communication relevant to an issue of the physical, mental or emotional condition of the

 patient in any proceeding in which he relies upon the condition as an element of his claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense."

duction of evidence, *Papen v. Suburban Propane Gas Corporation,* Del.Super., 229 A.2d 567, 570 (1967). Moreover, "informal methods are to be encouraged, for they facilitate early evaluation and settlement of cases, with a resulting decrease in litigation costs, and represent further the wise application of judicial resources." *Trans-World Investments v. Drobny,* Alaska Supr., 554 P.2d 1148, 1152 (1976).

Plaintiffs argue that informal interviews would disrupt the orderly discovery procedure, permit defense counsel to privately inquire into irrelevant matters, and expose a physician to tort liability. Plaintiffs further submit that, by requiring the presence of plaintiffs' counsel during formal discovery, plaintiffs' fear that personal confidences are being disclosed would be allayed. It is also contended that formal discovery preserves the sanctions and protections available under the Rules of Civil Procedure. Finally, it is contended that informal interviews would give rise to assistance to the patient's antagonist in litigation and that such interviews should not be allowed. Plaintiffs cite as authority *Wenninger v. Muesing,* 307 Minn. 405, 240 N.W.2d 333 (1976), *Japp v. District Court of Eighth Judicial Dist.,* Mont.Supr., 623 P.2d 1389 (1981), and *Alexander v. Knight,* Pa.Super., 177 A.2d 142 (1962).

■ These arguments are not persuasive. Once the physician-patient privilege has been waived, the physician becomes available for interview just like any other witness. Physicians can limit or refuse contact with defense counsel as they choose until compelled to testify under the Rules of Civil Procedure. However, any limitation based on a physician's fear of violating a patient's qualified right to privacy implicit in the Hippocratic Oath[2] is not grounded in legal reality once the patient files a personal injury claim that puts his physical, mental, or emotional condition in issue. D.U.R.E. 503(d)(3). *See Orr v. Sievert,* 162 Ga.App. 677, 292 S.E.2d 548 (1982).

The Court holds that defense counsel may not be denied informal access to plaintiffs' treating physician by plaintiffs' refusal to execute a medical release. *See Doe v. Lilly, supra; Trans-World Investments, Inc. v. Drobny, supra; Lazorick v. Brown, supra; Gailitis v. Bassett,* Mich.Ct.App., 146 N.W.2d 708 (1966). To this end, the Court grants defendant's motion and enters a declaratory order that the physician-patient privilege of Adrienne L. Green is waived concerning any matter which is relevant to bodily injuries complained of by Adrienne L. Green as received on or about October 13, 1982 as the result of a collision with a vehicle operated by the defendant including those matters which may have an historical or causal connection to those injuries. *See Arctic Motor Freight, Inc. v. Stover,* Alaska Supr., 571 P.2d 1006 (1977). The form of this order is intended to allay the physicians' concerns and to restate the law as to the nonexistence of a privilege under these circumstances. The order is not to be interpreted as requiring a doctor to confer with defendant's representatives prior to the implementation of formal discovery devices compelling such disclosure.[3]

**2.** The Hippocratic Oath provides:

"Whatever, in connection with my professional practice, or not in connection with it, I see or hear, in the life of men, which ought not to be spoken of abroad, I will not divulge, as reckoning that all such should be kept secret." (Oath of Hippocrates, 400 B.C.)

**3.** Such voluntary action by the physician would be consistent, however, with the *Interprofessional Code of Conduct and Practice* jointly promulgated in 1957 by the Medical Society of Delaware and the Delaware Bar Association, which provides in pertinent part:

"When a physician is approached by the attorney on the opposing side of the case, he should remember that a witness does not 'belong' to either side and that he, as in the case of any other witness, is free to talk to the lawyer on both sides."

■ Because the filing of a personal injury suit serves as the operative fact of waiver, it should not be necessary for a defendant to move for a declaratory order that the privilege is waived. The Court takes judicial notice of the practice in this jurisdiction that authorizations for release of medical information are routinely provided by plaintiffs in personal injury cases upon request of defense counsel. It is expected that this practice will continue. Should a party be required to seek a declaratory order in the future, an award of costs and attorneys' fees will be appropriate in all but the most unusual cases. *See Trans-World Investments, Inc. v. Drobny, supra,* 554 P.2d at 1152 n. 15.

\* \* \* \* \* \*

Motion granted.