771 P.2d 984

**Marcella SANCHEZ,**
**Claimant–Appellant,**

v.

**WOHL SHOE COMPANY and Home Insurance Company,**
**Respondents–Appellees.**

**No. 10604.**

Court of Appeals of New Mexico.

Jan. 19, 1989.

Certiorari Dismissed March 14, 1989.

Charles R. Finley, Warner & Finley, Albuquerque, for claimant-appellant.

Annie–Laurie Coogan, Butt, Thornton & Baehr, P.C., Albuquerque, for respondents-appellees.

## OPINION

DONNELLY, Judge.

The previous opinion is withdrawn and the following is substituted.

Claimant appeals from a decision of the Workers' Compensation Division denying her request for attorney fees. The single issue presented on appeal is whether claimant was entitled to an award of attorney fees payable by respondents based on claimant's contention that respondents, without reasonable basis, denied that she sustained an injury and that respondents acted in bad faith in delaying and processing her claim. We affirm the judgment of the hearing officer.

Claimant suffered an accidental injury on February 5, 1987, in the course and scope of her employment. A few weeks later respondents voluntarily began to pay total disability compensation because of claimant's inability to work. Respondents continued to pay total compensation until June 28, 1987, after which claimant filed her claim for continued benefits with the Division. Pending a final decision by the Division, respondents paid some interim compensation.

After formal hearing before the Division claimant was awarded compensation for temporary total disability under the Workmen's Compensation Act, NMSA 1978, Sections 52–1–1 to –70 (Cum.Supp.1986) (Interim Act). She then sought payment of her attorney fees under the Interim Act, alleging respondents had acted in bad faith in handling her claim, Section 52–1–54(C)(2), and in unreasonably denying that an injury occurred, Section 52–1–54(C)(3).

Prior to the Interim Act of 1986 a successful worker's compensation claimant could collect attorney fees from the employer as part of the costs of the proceedings. *Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 695 P.2d 483 (1985). In 1986 the legislature amended Section 52–1–54(C) to provide that "[a] workman shall be responsible for payment of his own attorneys' fees" except in circumstances specifically described in the statute. *See* 1986 N.M.Laws, ch. 22, §§ 18 & 105. In 1987 the legislature again revised the attorney fee provision. § 52–1–54 (Repl.Pamp. 1987). The claim in the instant case, however, arose during the period when the 1986 Interim Act was applicable.

After an evidentiary hearing on claimant's request for an award of attorney fees, the hearing officer ruled that claimant should pay her own attorney fees, based on the following findings:

1. Respondents acted in good faith in their handling of this claim. Respondents did not engage in bad faith as defined in Section 52–1–54 N.M.S.A. (1986 Supp.).

2. Respondents' Counsel acted in good faith at all times material hereto in her handling of this cause. Respondents' Counsel did not engage in bad faith as defined in Section 52–1–54.

3. Claimant failed to establish any economic loss from any alleged bad faith on the part of Respondents or their Counsel.

4. Respondents did not specifically deny that an injury had occurred.

Claimant challenges these findings and asserts error in the rejection of her requested findings.

## CLAIMANT'S ALLEGATIONS OF BAD FAITH

Claimant's request for an award of attorney fees based on allegations of bad faith by respondents falls into three categories: (1) failure of the respondents to pay total disability benefits; (2) contacts made by respondents' adjuster and attorney with her treating physician; and (3) failure of respondents to pay certain medical costs. In reviewing claimant's contentions we have considered the whole record, *see Tallman v. ABF*, 108 N.M. 124, 767 P.2d 363 (Ct.App.1988), and have determined that there is substantial evidence to support the findings of the hearing officer.

■ Section 52–1–54(C)(2) of the Interim Act defines conduct on the part of respondents which will entitle an injured worker to the payment of the worker's attorney fees. It provides that a worker shall be responsible for payment of his own attorney fees except that he shall be entitled to recover a reasonable attorney fee from an employer where the hearing officer finds that the employer "acted in bad faith with regard to handling the injured

workman's claim and the injured workman has suffered economic loss as a result thereof * * *." Bad faith means "conduct * * * in the handling of a claim which amounts to fraud, malice, oppression or willful, wanton or reckless disregard of the rights of the workman." § 52–1–54(C)(2). Thus, an award of attorney fees under Section 52–1–54(C)(2) requires a specific finding by the hearing officer of bad faith on the part of the employer in handling the worker's claim and a showing that the worker has suffered economic loss as a result thereof.

Claimant suggests that this court apply not only the statutory definition of bad faith but also the supplemental definition, "frivolous or unfounded refusal to pay," which was developed in New Mexico's law of bad faith in the context of general insurance. *E.g., State Farm Gen. Ins. Co. v. Clifton*, 86 N.M. 757, 527 P.2d 798 (1974) (delay in paying proceeds of residential damage insurance); *Chavez v. Chenoweth*, 89 N.M. 423, 553 P.2d 703 (Ct.App.1976) (delay in paying medical expenses under automobile insurance policy). Given the specific definition provided by the legislature in Section 52–1–54(C)(2), we need not look beyond the boundaries of the statute. The language defining "bad faith" in Section 52–1–54(C)(2) closely parallels the conduct required in order to award punitive damages. *See* SCRA 1986, 13–1827. Punitive damages are imposed "for the limited purposes of punishment and to deter others from the commission of like offenses." *Marler v. Allen*, 93 N.M. 452, 601 P.2d 85 (Ct.App.1979). Similarly, attorney fees under Section 52–1–54(C)(2) may be viewed as punishment.

Claimant argues that respondents' failure to pay total disability benefits after June 28, 1987, was evidence of bad faith. Failure or refusal to pay compensation triggers the right to file a claim for worker's compensation. § 52–1–31(A). However, a failure or refusal to pay compensation benefits does not constitute bad faith in itself. Thus, where cessation of benefits forms the basis of a claim of bad faith, claimant must show that the employer's failure to

pay compensation was fraudulent, malicious, oppressive, or that the conduct was in willful, wanton, or reckless disregard of the rights of the worker. § 52–1–54(C)(2).

As shown by the record, while respondents were paying total compensation, they received regular assurances from claimant's treating physician, Dr. Charles Hounshell, that claimant was benefitting from treatment and would soon be returning to work. The record also indicates that respondents paid total disability benefits well beyond Dr. Hounshell's projected date for claimant's return to work.

Plaintiff testified, however, that she continued to have problems that Dr. Hounshell could not explain and that she was referred to a neurologist, Dr. Richard Weber, whose examination revealed only subjective findings. Dr. Weber was unable to find any objective reasons for claimant's continued complaints. He recommended that claimant wear a special shoe "to become cosmetically acceptable for her return to work." Dr. Weber's report concluded:

> The patient's status, at this point, has not been markedly improved with her present surgical intervention or physical therapy treatment. The prognosis in this regard is extremely guarded, as many of these soft tissue injuries will take an extensive period of time in order to have a decreased amount of subjective, symptomatic findings.

> As far as future permanent disability, I feel that the patient exhibits less than a 5% permanent partial impairment in the left foot.

The hearing officer's observation that Dr. Weber's report is capable of more than one interpretation as to whether claimant could return to work at that time is supported by the record. Insurer could reasonably interpret the report to mean that claimant would be able to return to work if she were fitted with the proper shoe. Claimant, on the other hand, relies on Dr. Weber's description of her continued complaints. She also argues that it was not reasonable for respondents to stop compensation based solely on their interpretation of Weber's report when none of the doctors had re-leased her to work or had stated that she had reached maximum medical improvement. Claimant insists that respondents could not reasonably stop paying compensation until a doctor had stated that she has reached maximum medical improvement. *See* § 52–1–27 (repealed by 1987 N.M.Laws, ch. 235, § 54(B), effective June 19, 1987).

Respondents contend that the question in June 1987 was not whether claimant had reached maximum medical improvement, but whether she was able to return to work. We agree. "Temporary total disability" as defined in the Interim Act means that the worker is unable to "perform his duties prior to the date of his maximum medical improvement." § 52–1–26 (repealed by 1987 N.M.Laws, ch. 235, § 12, effective June 19, 1987). Once a worker is able to perform her duties, total disability compensation is no longer warranted. In addition to Dr. Weber's report, other evidence in the record supports respondents' contention that they believed that claimant could return to work in June 1987.

Claimant cites evidence disputing certain of the reasons given by respondents for their June 1987 decision to terminate her total disability compensation. An appellate court, however, may not reweigh the evidence or retry a disputed issue for a different result where there is evidence to support the decision of the fact finder. *Sandoval v. Department of Employment Sec.*, 96 N.M. 717, 634 P.2d 1269 (1981). The test to be applied on appeal is whether there is substantial evidence to support the judgment of the trial court, not whether there is evidence to support an alternative result. *Abbinett v. Fox*, 103 N.M. 80, 703 P.2d 177 (Ct.App.1985). The record supports the hearing officer's determination that respondents did not act in a willful, wanton, or reckless disregard of claimant's rights in terminating her total disability compensation in June 1987.

Claimant also cites as evidence of bad faith the communications with her physician by respondents and their attorney. Claimant complains that the adjuster re-

peatedly telephoned Dr. Hounshell seeking updates on claimant's condition and asking when she would be released to work. Claimant also complains that, although not authorized in her medical release, respondents' attorney contacted Dr. Hounshell on two occasions. On one occasion the doctor was contacted to inform him that a special medical referral was not authorized. The other occasion concerned an affidavit of Dr. Hounshell that claimant's attorney intended to submit at the formal hearing. After receiving a copy of the affidavit, respondents' attorney contacted the doctor to request clarification of some points by addendum affidavit. The hearing officer could properly find that the communications with Dr. Hounshell did not constitute bad faith. Moreover, as observed in *Trujillo v. Puro*, 101 N.M. 408, 683 P.2d 963 (Ct.App.1984), there is no physician-patient privilege in New Mexico, except as provided in SCRA 1986, 11–504.

Finally, claimant complains that respondents failed to pay her hospital bill or to reimburse her for prescription costs and asserts that this conduct amounts to bad faith. Respondents generally paid claimant's medical bills promptly and agreed to pay those medical costs recommended by the treating physician. However, during the time this case was pending before the Division, respondents did decline to pay some medical costs. Respondents have the right to dispute the reasonableness or necessity of medical costs, but claimant does not reveal the nature of any dispute over unpaid bills or cite evidence that respondents failed to pay these costs in bad faith. It is clear from the definition of bad faith in Section 52–1–54(C)(2) that claimant must establish more than failure to pay; claimant must establish that such failure was in bad faith.

Section 52–1–54(C)(2) also specifically requires that the hearing officer find that claimant has suffered economic damage as a result of employer's bad faith handling of the claim. Since a finding of the employer's bad faith is a prerequisite to recovery of attorney's fees under the interim act and this issue was decided adversely to claimant, we need not reach her other claims regarding allegations of economic loss.

## EMPLOYER'S DENIAL

Section 52–1–54(C)(3) provides that four elements must be present to justify an award of attorney fees on the basis of an employer's defense to a worker's claim: (1) employer denies that an injury occurred; (2) without reasonable basis; (3) the worker prevails on that issue; and (4) is awarded compensation. Claimant states that the third and fourth elements are "obviously established." Although claimant established her right to compensation, the hearing officer determined that claimant's proof was insufficient to establish the other required elements.

The response filed by respondents alleged, among other things, that they paid temporary total disability, that claimant was not permanently disabled and that she had been released to return to work. We have reviewed the pleadings and the evidence and find that the record supports the hearing officer's determination that respondents did not deny that an injury occurred. Moreover, the pre-hearing order stipulated that an accident or injury occurred on February 5, 1987, during the course of claimant's employment with Wohl Shoe Company, and narrowed the issues to the extent of the benefits to which claimant was entitled, whether claimant had been properly compensated for accrued benefits, claimant's assertion of an alleged safety device violation, and claimant's request for an award of attorney's fees.

The order of the hearing officer is affirmed.

Claimant's request for attorney fees on appeal is denied. The parties shall bear their own attorney fees incident to this appeal.

IT IS SO ORDERED.

BIVINS, C.J., and HARTZ, J., concur.