790 P.2d 1050
STATE of New Mexico,
Plaintiff–Appellee,

v.

James W. COTTON, Jr.,
Defendant–Appellant.

No. 11208.

Court of Appeals of New Mexico.

March 6, 1990.

Certiorari Denied April 5, 1990.

Hal Stratton, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Linda Yen, Hugh W. Dangler, Asst. Appel-

late Defenders, Santa Fe, for defendant-appellant.

## OPINION

DONNELLY, Judge.

Defendant appeals his convictions of two counts of criminal solicitation. Sixteen separate issues are raised on appeal, including a challenge as to the sufficiency of the evidence. Because we find the latter challenge meritorious, we reverse.

In 1986, defendant, together with his wife Gail, five children, and a stepdaughter, moved to New Mexico. A few months later, defendant's wife and children returned to Indiana. Shortly thereafter, defendant's fourteen-year-old stepdaughter moved back to New Mexico to reside with him. In 1987, the Department of Human Services investigated allegations of misconduct involving defendant and his stepdaughter. Subsequently, the district court issued an order awarding legal and physical custody of the stepdaughter to the Department, and she was placed in a residential treatment facility in Albuquerque.

In May 1987, defendant was arrested and charged with multiple counts of criminal sexual penetration of a minor and criminal sexual contact of a minor. While in the Eddy County Jail awaiting trial on those charges defendant discussed with his cellmate James Dobbs, and Danny Ryan, another inmate, his desire to persuade his stepdaughter not to testify against him. During his incarceration defendant wrote numerous letters to his wife; in several of his letters he discussed his strategy for defending against the pending criminal charges.

On September 23, 1987, defendant addressed a letter (State's Exhibit No. 1) to his wife. In that letter he requested that she assist him in defending against the pending criminal charges by persuading his stepdaughter not to testify at his trial. The letter also urged his wife to contact the stepdaughter and influence her to return to Indiana or that she give her money to leave the state so that she would be unavailable to testify. After writing this letter defendant gave it to Dobbs and asked him to obtain a stamp for it so that it could be mailed later. Unknown to defendant, Dobbs removed the letter from the envelope, replaced it with a blank sheet of paper, and returned the sealed stamped envelope to him. Dobbs gave the original letter written by defendant to law enforcement authorities, and it is undisputed that defendant's original letter (State's Exhibit No. 1) was never in fact mailed nor received by defendant's wife.

On September 24 and 26, 1987, defendant composed another letter (State's Exhibit No. 2) to his wife. He began the letter on September 24 and continued it on September 26, 1987. In this letter defendant wrote that he had revised his plans and that this letter superseded his previous two letters. The letter stated that he was arranging to be released on bond; that his wife should forget about his stepdaughter for a while and not come to New Mexico; that defendant would request that the court permit him to return to Indiana to obtain employment; that his wife should try to arrange for his stepdaughter to visit her in Indiana for Christmas; and that his wife should try to talk the stepdaughter out of testifying or to talk her into testifying favorably for defendant. Defendant also said in the letter that his wife should "warn" his stepdaughter that if she did testify for the state "it won't be nice * * * and she'll make [New Mexico] news," and that, if the stepdaughter was not available to testify, the prosecutor would have to drop the charges against defendant.

Defendant secured his release on bail on September 28, 1987, but approximately twenty-four hours later was rearrested on charges of criminal solicitation and conspiracy. At the time defendant was rearrested, law enforcement officers discovered and seized from defendant's car, State's Exhibit No. 2, two personal calendars, and other documents written by defendant. It is also undisputed that the second letter, State's Exhibit No. 2, was never mailed to defendant's wife.

Following a jury trial, defendant was convicted on two counts of criminal solicita-

tion. A third count of criminal solicitation was dismissed by the state prior to trial, and the court granted a directed verdict in favor of defendant on a charge of conspiracy.

## SUFFICIENCY OF EVIDENCE

The charges of criminal solicitation were alleged to have occurred on or about September 23, 1987. Count I of the amended criminal information alleged that defendant committed the offense of criminal solicitation by soliciting another person "to engage in conduct constituting a felony, to-wit: Bribery or Intimidation of a Witness (contrary to Sec. 30–24–3, NMSA 1978)." Count II alleged that defendant committed the offense of criminal solicitation by soliciting another "to engage in conduct constituting a felony, to-wit: Custodial Interference (contrary to Sec. 30–4–4, NMSA 1978)."

The offense of criminal solicitation as provided in NMSA 1978, Section 30–28–3 (Repl. Pamp. 1984), is defined in applicable part as follows:

> A. Except as to bona fide acts of persons authorized by law to investigate and detect the commission of offenses by others, a person is guilty of criminal solicitation if, with the intent that another person engage in conduct constituting a felony, he solicits, commands, requests, induces, employs or otherwise attempts to promote or facilitate another person to engage in conduct constituting a felony within or without the state.

Defendant contends that the record fails to contain the requisite evidence to support the charges of criminal solicitation against him because defendant's wife, the intended solicitee, never received the two letters, State's Exhibits Nos. 1 and 2. In reviewing this position, the focus of our inquiry necessarily turns on whether or not the record contains proper evidence sufficient to establish each element of the alleged offenses of criminal solicitation beyond a reasonable doubt.

In considering challenges to the sufficiency of the evidence, the standard of review on appeal is whether the evidence contained in the record, considered in a light most favorable to the state, is sufficient to indicate that a rational factfinder could have found defendant guilty of the offense charged beyond a reasonable doubt with respect to every element of the alleged offense. *State v. Tovar*, 98 N.M. 655, 651 P.2d 1299 (1982); *State v. Segotta*, 100 N.M. 18, 665 P.2d 280 (Ct.App.), *rev'd in part on other grounds*, 100 N.M. 498, 672 P.2d 1129 (1983).

On appeal, we view the testimony and evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict. *State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978). The evidence may be direct or circumstantial, *State v. Brown*, 100 N.M. 726, 676 P.2d 253 (1984), and material facts may be proved by inference. *Id.; State v. Tovar*. However, evidence supporting a criminal conviction must be based on logical inference and not upon surmise or conjecture. *Id.; State v. Romero*, 67 N.M. 82, 352 P.2d 781 (1960).

■ The state's brief-in-chief states that "[n]either of these letters [Exhibits 1 & 2] actually reached Mrs. Cotton, but circumstantial evidence indicates that other similar letters did reach her during this period." The state also argues that under the express language of Section 30–28–3(A), where defendant is shown to have the specific intent to commit such offense and "otherwise attempts" its commission, the offense of criminal solicitation is complete. The state reasons that even in the absence of evidence indicating that the solicitations were actually communicated to or received by the solicitee, under our statute, proof of defendant's acts of writing the letters, attempts to mail or forward them, together with proof of his specific intent to solicit the commission of a felony constitutes sufficient proof to sustain a charge of criminal solicitation. We disagree.

The offense of criminal solicitation, as defined in Section 30–28–3 by our legislature, adopts in part, language defining the crime of solicitation as set out in the Model Penal Code promulgated by the American

Law Institute. Our solicitation statute also incorporates language similar, in part, to the solicitation statute contained in the Colorado Criminal Code, Section 18–2–301. *See* Colo.Rev.Stat. § 18–2–301 (Repl.Pamp. 1986). As enacted by our legislature, however, Section 30–28–3 significantly omits one section of the Model Penal Code, Section 5.02(2), which pertains to the effect of an uncommunicated criminal solicitation.

The commentary to the American Law Institute Model Penal Code explains that "[g]eneral statutory provisions punishing solicitations were not common before the Model Penal Code."[1] Model Penal Code § 5.02, commentary 2, § 5.02, at 367 (1985). The Commentary further notes in Section 5.02 of its proposed draft of criminal solicitation that:

> Under Subsection (2) [of proposed Section 5.02 of the Model Penal Code], conduct "designed to effect" communication of the culpable message is sufficient to constitute criminal solicitation and there is therefore no need for a crime of attempted solicitation.
>
> One reason for treating the crimes of solicitation and attempt in separate provisions was the judgment, reflected in Subsection (2), that the last proximate act to effect communication with the party whom the actor intends to solicit should be required before liability attaches on this ground.

*Id.* at 381.

Similarly, as observed in 4 C. Torcia, *Wharton's Criminal Law* Section 717, at 520 (14th ed. 1980):

> Under the Model Penal Code, a person is guilty of 'solicitation to commit a crime' when 'with the purpose of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.' It is immaterial 'that the actor fails to communicate with the person he solicits to commit a crime if his conduct was designed to effect such communication.' [Footnotes omitted.]

However, as enacted by our legislature, Section 30–28–3 sets out the offense of criminal solicitation in a manner which differs in several material respects from the proposed draft of the Model Penal Code. Among other things, our statute requires that the solicited offense constitute a felony. *Id.* The statute also excepts from the offense of solicitation "bona fide acts of persons authorized by law to investigate and detect the commission of offenses by others" an exception to the offense of solicitation. *Id.* Additionally, Section 30–28–3 specifically omits that portion of the Model Penal Code subsection declaring that an uncommunicated solicitation to commit a crime may constitute the offense of criminal solicitation.[2] The latter omission, we conclude, indicates an implicit legislative intent that the offense of solicitation requires some form of actual communication from the defendant to either an intermediary or the person intended to be solicited, indicating the subject matter of the solicitation.

Where the legislature has amended a statute or omitted a portion of an act, it is presumed to have intended to modify the act. *See, e.g., State ex rel. Bird v. Apodaca,* 91 N.M. 279, 573 P.2d 213 (1977) (when legislature enacts a new statute, the Supreme Court presumes that it intended to change the law as it previously existed). While inquiry into legislative intent necessarily commences with a review of the lan-

---

1. As observed by the drafters of the Model Penal Code in their commentary to Section 5.02, prior to the promulgation of the American Law Institute proposed Criminal Solicitation statute, uncommunicated messages by a defendant could under some circumstances constitute attempted solicitation, but "it [is] considered doubtful whether an uncommunicated message could constitute a solicitation." *Id.* n. 55 at 381.

2. The American Law Institute, Model Criminal Code, Section 5.02(2) provides: "It is immaterial under Subsection (1) of this Section that the actor fails to communicate with the person he solicits to commit a crime if his conduct was designed to effect such communication." This language was not included in Section 30–28–3 as enacted by N.M.Laws 1979, ch. 265, § 1.

guage used in the statute in question, the history and background of the act is also instructive in determining legislative intent. *Smith Mach. Corp. v. Hesston, Inc.*, 102 N.M. 245, 694 P.2d 501 (1985).

Relying on *People v. Bloom*, 149 App. Div. 295, 133 N.Y.S. 708 (1912), the state contends that the offense of solicitation nevertheless may be recognized to constitute a completed offense even when there was no communication to the solicitee. *Bloom*, however, is not controlling in the instant case. The court in *Bloom* set aside defendant's conviction and remanded for a new trial on the charge of *attempt to incite* a criminal offense, holding that the charge of *attempt to incite* did not require that the solicitation actually be communicated to the person sought to be reached. In the present case defendant was not charged with attempted solicitation, but rather, with the offenses of solicitation.

The state also asserts that evidence of defendant's conversations with inmates Dobbs and Ryan and the defendant's notations on his personal calendars constitutes evidence of his intent to commit solicitation. While such evidence may in fact constitute proof of his intent to commit the offense of solicitation, this evidence is insufficient to prove that defendant actually communicated his request to his wife that she commit the offenses charged in the amended criminal information. Similarly, the fact that defendant wrote numerous letters to his wife, apart from Exhibits 1 and 2, is insufficient to establish that defendant in fact solicited his wife to commit the specific crimes alleged. The mere writing and sending of letters by defendant to his wife, without proof of solicitation of a specific felony, and proof of defendant's intent to induce another to commit such crime, is insufficient to establish proof of criminal solicitation. SCRA 1986, 14-2817. *See also State v. Casteneda*, 97 N.M. 670, 642 P.2d 1129 (Ct.App.1982). Verdicts may not be based on speculation, guess or conjecture. SCRA 1986, 14-6006; *see Jewell v. Seidenberg*, 82 N.M. 120, 477 P.2d 296 (1970).

The question posed in the instant case is also discussed by the authors, W. LaFave and A. Scott. "What if the solicitor's message never reaches the person intended to be solicited, as where the intermediary fails to pass on the communication or the solicitee's letter is intercepted before it reaches the addressee? The act is nonetheless criminal, *although it may be that the solicitor must be prosecuted for an attempt to solicit on such facts.*" [Footnotes omitted; emphasis added.] 2 W. LaFave & A. Scott, *Substantive Criminal Law* § 6.1 (1986). We apply a similar result in the present case.

The state contends that under the language of Section 30–28–3, where proof is presented that defendant has the requisite intent and has "otherwise attempt[ed] to promote or facilitate another person to engage in conduct constituting a felony within or without the state," the offense of solicitation is complete. This contention must fail because Section 30–28–3 is silent as to any legislative intent to declare that uncommunicated solicitations shall constitute a criminal offense.

The state further argues that the words "otherwise attempt" contained in the statute indicates a legislative purpose to declare that an attempt to commit criminal solicitation in fact shall constitute the completed crime of criminal solicitation. We do not read the statute so broadly. In *State v. Davis*, 246 Ga. 761, 272 S.E.2d 721 (1980), the court upheld the constitutionality of the Georgia criminal solicitation statute. The court narrowly construed the phrase "or otherwise attempts to cause such other person to engage in such conduct" contained in such statute, under the principle of ejusdem generis. *Compare,* Haw.Rev.Stat. § 705–510, (1988); Kan.Stat. Ann. § 21–3303(b) (1988) (statutorily providing that it is immaterial that the actor fails to communicate with the person solicited if solicitor's conduct was designed to effect such communication).

For an attempt to constitute a criminal offense, proof is required both of an intent to commit the proscribed offense and the commission of some overt act in fur-

therance of the offense attempted. *See State v. Flowers*, 83 N.M. 113, 489 P.2d 178 (1971); *State v. Lopez*, 81 N.M. 107, 464 P.2d 23 (Ct.App.1969). The offenses of solicitation and attempt are analytically distinct in their elements because solicitation unlike attempt, is in the nature of preparation to commit an offense, rather than an act or acts in furtherance of the offense attempted. *See Gervin v. State*, 212 Tenn. 653, 371 S.W.2d 449 (1963). Proof of unilateral acts on the part of the defendant of an inducement or request to another that the latter commit a felony is, however, sufficient to establish the crime of solicitation. *State v. Gilbert*, 98 N.M. 77, 644 P.2d 1066 (Ct.App.1982).

The elements of the offense of solicitation as set out in UJI Crim. 14–2817 require proof beyond a reasonable doubt that:

1. The defendant intended that another person commit [name of felony];

2. The defendant [solicited] [commanded] [requested] [induced] [employed] the other person to commit the crime;

3. This happened in New Mexico on or about the ____ day of ____, 19____.

As indicated by the committee commentary to UJI 14–2817, relating to criminal solicitation, the committee found that under Section 30–28–3, "mere solicitation is not enough of an overt act to constitute an attempt." *See generally* Annotation, *Construction and Effect of Statutes Making Solicitation to Commit a Crime a Substantive Offense*, 51 A.L.R.2d 953 (1957). Thus, an attempt requires proof of an overt act to commit the intended criminal act. *State v. Lopez*. In contrast, a charge of solicitation is complete when the solicitation to commit the intended felony is made and it is immaterial that the object of the solicitation is not carried out or that no overt steps were in fact taken toward the consummation of the offense. *State v. Casteneda.* Under Section 30–28–3, proof that defendant solicited, commanded, requested, induced, or employed another to commit a felony necessarily requires evidence that the defendant, in some manner,

in fact communicated the solicitation to the person or persons intended to be solicited.

Commission of criminal solicitation does not require, however, that defendant directly solicit another; the solicitation may be perpetrated through an intermediary. *See* § 30–1–13 (Repl.Pamp. 1984). Thus if A solicits B in turn to solicit C to commit a felony, A would be liable even where he did not directly contact C because A's solicitation of B itself involves the commission of the offense. Where the intended solicitation is not in fact communicated to an intended intermediary or to the person sought to be solicited, the offense of solicitation is incomplete; although such evidence may support, in proper cases, a charge of attempted criminal solicitation.

Since we find defendant's claim of insufficiency of evidence dispositive, we do not address the other issues raised on appeal. We have also examined each argument advanced by the state and find those arguments unpersuasive. Defendant's convictions for solicitation are reversed and the cause is remanded with instructions to set aside the convictions for criminal solicitation.

IT IS SO ORDERED.

ALARID and APODACA, JJ., concur.