845 P.2d 824

**CHURCH'S FRIED CHICKEN NO. 1040, Employer, and the Travelers Insurance Co., Insurer, Applicants–Appellants,**

v.

**Teresa HANSON, Respondent–Appellee.**

No. 13153.

Court of Appeals of New Mexico.

Oct. 15, 1992.

Certiorari Denied Jan. 6, 1993.

Bradford V. Coryell, Compton, Coryell, Hickey & Ives, P.A., Santa Fe, for applicants-appellants.

Victor A. Titus, Farmington, for respondent-appellee.

Manuel I. Arrieta, Weinbrenner, Richards, Paulowsky, Sandenaw & Ramirez, P.A., Las Cruces, amicus curiae, New Mexico Defense Lawyers' Ass'n.

## OPINION

DONNELLY, Judge.

In this interlocutory appeal, we examine the question of whether the district court erred in issuing an order prohibiting Employer's workers' compensation insurer (Insurer) from engaging in ex parte contacts

with Worker's treating physician. We affirm the order entered below.

Worker suffered a work-related injury to her back in July 1986, while employed by Church's Fried Chicken restaurant in Farmington. Following a trial on the merits in January 1988, the district court found that Worker was totally disabled from August 24, 1987, to January 5, 1988, and partially permanently disabled after January 5, 1988.

In January 1990 Worker underwent a disc fusion operation. Thereafter, in December 1990, Insurer's adjuster wrote a letter to Worker's treating physician, asking whether Worker had reached maximum medical improvement, the extent of her present impairment, and whether the physician would place any restrictions on her activities. Worker's attorney, who had received a copy of the adjuster's letter, responded by requesting the physician not to answer Insurer's questions. Despite this request, the physician sent a written reply to the adjuster's inquiry, stating his opinion that Worker had not yet reached maximum medical improvement, but she would do so in approximately two months and, at that time, she would be able to perform light, sedentary, and, perhaps, some moderately heavy work.

Worker filed a motion in the district court to prevent further ex parte contact with her physician. Worker objected only to ex parte contacts; she voiced no objection to communications between Insurer and the treating physician that occurred when her attorney was present. The district court filed an order granting Worker's request, and stated that if Worker's attorney was given notice and a reasonable opportunity was accorded her attorney permitting him to be present at telephonic or in-person conferences, any and all relevant information sought by Insurer from the treating physician was subject to discovery. Insurer appeals the limitation on its right to engage in further ex parte contacts with Worker's treating physician.

Insurer's challenge to the validity of the district court's order precluding ex parte contact with Worker's physician raises issues of statutory interpretation, public-policy considerations, and jurisdictional arguments.

■ First, Insurer argues that the legislature, by enacting NMSA 1978, Section 52–10–1 (Repl.Pamp.1991), has authorized ex parte contacts similar to those sought herein. Alternatively, Insurer maintains that if Section 52–10–1 is not controlling as to this issue, Insurer's contacts with Worker's physician should, nevertheless, remain unrestricted because, under our statutory workers' compensation scheme, formal discovery methods are not adequate to serve the informational needs of the workers' compensation system.

In resolving Insurer's initial contention, we consider the effect, if any, of Section 52–10–1 on this case. Section 52–10–1 became effective on January 1, 1991, and provides:

A. A health care provider shall immediately release to a worker, that worker's employer, that employer's insurer, the appropriate peer review organization or the health care selection board all medical records, medical bills and other information concerning any health care or health care service provided to the worker, upon either party's written request to the health care provider for that information. Except for those records that are directly related to any injuries or disabilities claimed by a worker for which that worker is receiving benefits from his employer, the request shall be accompanied by a signed authorization for that request by the worker.

B. An employer or worker shall not be required to continue to pay any health care provider who refuses to comply with Subsection A of this section.

Worker's underlying claim was filed in district court prior to the enactment of Section 52–10–1. She also obtained a judgment for compensation benefits prior to the effective date of this enactment. The judgment, however, remains subject to modification in the event Worker's disability changes. *See DiMatteo v. County of Dona Ana*, 109 N.M. 374, 785 P.2d 285 (Ct.App.1989). Thus, we examine the appli-

cability of Section 52–10–1 upon the present case and whether Article IV, Section 34 of the New Mexico Constitution precludes application of this statute in a "pending case." In addressing this issue, we first consider whether the fact that a workers' compensation judgment remains subject to modification during the entire period for which benefits were awarded, means that a workers' compensation case is a "pending case" within the meaning of this constitutional provision.

The fact that the district court's judgment was subject to modification did not render it a "pending case" within the prohibition of Article IV, Section 34 of the New Mexico Constitution so as to bar the application of Section 52–10–1 following entry of the final judgment. In reaching this conclusion, we are guided by the reasoning applied by our supreme court in *Phelps v. Phelps*, 85 N.M. 62, 509 P.2d 254 (1973). In *Phelps* our supreme court considered the effect of a statute changing the age of majority. The court held that a divorce decree, entered prior to the statute, included a provision for child support and thus remained subject to future modification based upon a showing of materially changed circumstances, was not a "pending case" within the contemplation of Article IV, Section 34 of our state constitution. *Phelps* defined a "pending case" as one that is in the process or course of litigation and has not been concluded by a final judgment. The *Phelps* court emphasized that a final divorce decree is entitled to full faith and credit despite the possibility it may, under certain circumstances, be subject to modification. We see no significant difference between the rationale applied in *Phelps* and the workers' compensation judgment at issue in this case.

We have not overlooked *Churchill v. City of Albuquerque*, 66 N.M. 325, 347 P.2d 752 (1959), and *Segura v. Jack Adams General Contractor*, 64 N.M. 413, 329 P.2d 432 (1958), relied upon by Insurer and Amicus. These cases held that, in workers' compensation cases, a judgment is not final until the entire 550–week period for payment of benefits has elapsed. These decisions, however, did not address the issue of the pendency of such a case for purposes of Article IV, Section 34 of the New Mexico Constitution. Both cases recognized a district court's power to modify a judgment in a workers' compensation case based upon changed circumstances. Since *Phelps* specifically held that the fact that a judgment may be subject to modification does not mean that the case remains "pending" for constitutional purposes, we think this decision constitutes persuasive authority on this issue.

At the time Section 52–10–1 took effect, no motions or other formal proceedings seeking to modify the final judgment were pending. The litigation had ended with the judgment, despite the right of Employer and Insurer to modify such judgment under the Workers' Compensation Act upon a showing of a change in Worker's disability. *See St. Clair v. County of Grant*, 110 N.M. 543, 797 P.2d 993 (Ct.App.1990). Thus, we conclude that the case was not "pending" as of January 1, 1991, within the prohibition imposed by our state constitution, and we agree with Insurer that it was entitled upon request to receive the information contemplated by Section 52–10–1.

■ We next examine whether Section 52–10–1 permits ex parte discovery as urged by Insurer. In reviewing an order of the district court limiting discovery we examine such ruling for an abuse of discretion. *DeTevis v. Aragon*, 104 N.M. 793, 727 P.2d 558 (Ct.App.1986).

Insurer argues that the statute permits it to contact ex parte Worker's treating physician and inquire about Worker's physical or emotional condition, prospects for improvement, restrictions on activities, and other matters. We disagree with Insurer's interpretation of Section 52–10–1. By its terms, the statute authorizes the release by the health care providers of all medical records, medical bills, and other information concerning any health care or health service provided to a worker, "upon either party's written request." Section 52–10–1(A). The statute allows a worker, employer, or insurer to obtain, without restriction, copies of a worker's medical records, bills

for services, and other documents "directly related to any injuries or disabilities claimed by a worker for which that worker is receiving benefits from his employer." *Id.* The statute does not, however, in the absence of a worker's consent, authorize ex parte oral discussion by an employer or insurer with a worker's treating physician concerning a worker's medical condition, nor the production of matters not reasonably related to a worker's disability claim, medical expenses, or health care services arising out of such claim. The legislative section heading for Section 52–10–1 refers to "RELEASE OF MEDICAL RECORDS." The term "records" refers to matters which have been "recorded" or which have been "documented." *Webster's New Collegiate Dictionary,* 966 (1977).

Courts in other jurisdictions that have addressed the question of whether an opposing party is entitled to ex parte discovery from an injured party's treating physician in personal injury actions or other proceedings have reached conflicting results. *See generally* Daniel P. Jones, Annotation, *Discovery: Right to Ex Parte Interview With Injured Party's Treating Physician,* 50 A.L.R.4th 714 (1986). The results reached by some courts have been influenced, in part, by express statutory provisions. Jurisdictions which have upheld the right to conduct ex parte interviews of a plaintiff's treating physician have generally premised such right upon their determination that commencement of an action for personal injuries constitutes a waiver by the plaintiff of the physician-patient privilege in that proceeding. *See, e.g., Doe v. Eli Lilly & Co.,* 99 F.R.D. 126 (D.D.C.1983); *Romine v. Medicenters of Am., Inc.,* 476 So.2d 51 (Ala.1985); *Langdon v. Champion,* 745 P.2d 1371 (Alaska 1987); *Green v. Bloodsworth,* 501 A.2d 1257 (Del.Super.Ct.1985); *Pic N' Save v. Singleton,* 551 So.2d 1244 (Fla.Dist.Ct.App. 1989); *Davenport v. Ephraim McDowell Mem. Hosp., Inc.,* 769 S.W.2d 56 (Ky.Ct. App.1988); *Domako v. Rowe,* 184 Mich. App. 137, 457 N.W.2d 107 (1990), *aff'd,* 438 Mich. 347, 475 N.W.2d 30 (1991); *Lazorick v. Brown,* 195 N.J.Super. 444, 480 A.2d 223 (App.Div.1984).

Conversely, other courts have held that, in the absence of an express waiver, ex parte discovery by a party of a plaintiff's treating physician is improper. *See, e.g., Duquette v. Superior Court,* 161 Ariz. 269, 778 P.2d 634 (Ct.App.1989); *Fields v. McNamara,* 189 Colo. 284, 540 P.2d 327 (1975) (en banc); *Petrillo v. Syntex Lab., Inc.,* 148 Ill.App.3d 581, 102 Ill.Dec. 172, 499 N.E.2d 952 (1986), *cert. denied,* 113 Ill.2d 584, 106 Ill.Dec. 55, 505 N.E.2d 361, *and cert. denied,* 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987); *Roosevelt Hotel Ltd. Partnership v. Sweeney,* 394 N.W.2d 353 (Iowa 1986); *Wesley Med. Ctr. v. Clark,* 234 Kan. 13, 669 P.2d 209 (1983); *Wenninger v. Muesing,* 307 Minn. 405, 240 N.W.2d 333 (1976); *State ex rel. Woytus v. Ryan,* 776 S.W.2d 389 (Mo.1989) (en banc); *Jaap v. District Court,* 191 Mont. 319, 623 P.2d 1389 (1981); *Travelers Ins. Co. v. Woodard,* 461 S.W.2d 493 (Tex.Civ.App. 1970); *State ex rel. Klieger v. Alby,* 125 Wis.2d 468, 373 N.W.2d 57 (Ct.App.1985).

Courts which have denied ex parte interviews with a plaintiff's treating physician have generally restricted such right because of privacy interests underlying the physician-patient relationship and concern that adversarial parties may seek to improperly influence a plaintiff's physician. *See, e.g., Duquette v. Superior Court; Fields v. McNamara; Linton v. City of Great Falls,* 230 Mont. 122, 749 P.2d 55 (1988).

As observed in *Manion v. N.P.W. Medical Center,* 676 F.Supp. 585 (M.D.Pa.1987), permitting ex parte interviews by an adversarial party without prior notice to the plaintiff or his attorney, eliminates any safeguards against revelation of matters irrelevant to the action and gives rise to situations permitting breaches in confidentiality between a patient and his treating physician. Similar concerns have been voiced by our supreme court in *Smith v. Ashby,* 106 N.M. 358, 743 P.2d 114 (1987).

In *Smith* our supreme court granted a writ of superintending control to preclude a district judge from requiring a plaintiff in a personal injury action to authorize ex parte disclosure of information by his treating

physician to defense counsel. The court reversed the order and quoted with approval from the Illinois Appellate Court's opinion in *Petrillo*, noting that

> the Illinois appellate court joined the "growing number of courts which have found that public policy strongly favors the confidentiality of the physician-patient relationship and thereby prohibits, because of the threat posed to the sanctity of that relationship, extra-judicial *ex parte* discussion of a patient's medical confidences."

*Smith v. Ashby*, 106 N.M. at 359, 743 P.2d at 115 (quoting *Petrillo v. Syntex Lab., Inc.*, 102 Ill.Dec. at 177, 499 N.E.2d at 957).

The *Smith* court also quoted with approval language in *Petrillo*, stating that " 'we find it difficult to believe that a physician can engage in an ex parte conference with the legal adversary of his patient without endangering the trust and faith invested in him by his patient.' " *Id.* at 359, 743 P.2d at 115 (quoting *Petrillo v. Syntex Lab., Inc.*, 102 Ill.Dec. at 182, 499 N.E.2d at 962). While the court in *Smith* dealt with the privacy right of a plaintiff in a personal injury action, we think the rationale and public-policy factors cited by the court apply equally in workers' compensation actions.

■ Insurer also argues that, irrespective of whether Section 52–10–1 is deemed applicable to the situation presented here, the district court was without authority to restrict its access to Worker's physician. Insurer contends there was no physician-patient privilege in effect in New Mexico at the time the district court entered its order limiting ex parte contact with Worker's treating physician, and that later recognition by our supreme court of such privilege in the Rules of Evidence could not provide support for the court's ruling in the instant case. *See* SCRA 1986, 11–504(D)(3) (effective July 1, 1990) (Cum.Supp.1992). While it is true that there was no general physician-patient privilege in effect when *Smith* was decided, the decision in *Smith* was grounded upon public-policy considerations.

We apply a similar approach in the instant case and conclude that the district court's authority to restrict ex parte discovery of Worker's treating physician is supported by public-policy considerations recognized in *Smith*.

■ Insurer additionally argues that employers and insurers are responsible for providing continuing medical care to an injured worker, unlike personal injury cases which, following entry of judgment, are normally concluded without further proceedings. Insurer reasons that because our workers' compensation system is designed to minimize litigation costs and delays, and to encourage informal methods of discovery and dispute resolution, the decision in *Smith* should be limited in scope. While we agree that these factors are important considerations in workers' compensation actions, we do not agree that these considerations are sufficient to negate the public-policy principles recognized by our supreme court in *Smith*. *See also Duquette v. Superior Court* (discussing rationales for preventing ex parte contacts with plaintiffs' physicians); *Petrillo v. Syntex Lab., Inc.* (same). Moreover, there has been no showing in this case that Insurer's access to relevant information will be materially restricted by the procedure authorized in the district court's order or that the procedure implemented by the court will result in significant delay or increase the cost of such proceedings.

Finally, Insurer argues that there are additional policy reasons why the decision in *Smith* should not be held applicable to workers' compensation cases. Insurer argues that *Sanchez v. Wohl Shoe Co.*, 108 N.M. 276, 771 P.2d 984 (Ct.App.1989), and *Trujillo v. Puro*, 101 N.M. 408, 683 P.2d 963 (Ct.App.1984), compel a different result in workers' compensation proceedings. We disagree. These decisions were not decided upon public-policy factors presented here. We deem *Smith* to be controlling on this issue.

We affirm the order of the district court. We acknowledge and express our appreciation for the amicus brief filed by the New Mexico Defense Lawyers' Association in this cause.

Worker is awarded $1,500 for the services of her attorney on appeal.

IT IS SO ORDERED.

ALARID, C.J., concurs.

BLACK, J., dissents.

BLACK, Judge (dissenting).

I believe this case should be disposed of within the confines of the workers' compensation context in which it arose. By analyzing this question against the backdrop of policy considerations relevant to tort cases the majority reaches a result from which I must respectfully dissent.

The majority spends substantial time considering the public policy enunciated by the Supreme Court in *Smith v. Ashby*. Initially, I would note that I do not read *Smith* as necessarily prohibiting a physician from meeting with opposing counsel on a voluntary basis. *See* Charles W. Adams & Bruce Hall, *New Mexico Discovery Practice Manual* 71 (1992). More importantly, I do not think the "public policy" enunciated in *Smith* was intended to be controlling in the workers' compensation context.[1]

I believe the majority fails to give proper consideration to the public policy underlying the Workers' Compensation Act (the Act). The purpose of the Act is to provide a workers' benefit system "interpreted to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers who are subject to the provisions of the Workers' Compensation Act." NMSA 1978, § 52–5–1 (Repl.Pamp.1987). The goal of providing the quick and efficient delivery of benefits at a reasonable cost is, therefore, preeminent under the workers' compensation law. *Cf. Gallegos v. Yeargin W. Constructors*, 104 N.M. 623, 623, 725 P.2d 599, 599 (Ct. App.1986) (case, in which judgment was entered seven months after filing, a "model for how a worker's compensation claim

should be expedited"). The objective of the Act is, then, different from that of the tort system out of which *Smith v. Ashby* arose. *Gonzales v. Chino Copper Co.*, 29 N.M. 228, 222 P. 903 (1924). *See generally* 1 Arthur Larson, *The Law of Workmen's Compensation* § 2.70 (1992). Moreover, since he is usually the only witness in a workers' compensation suit, the treating physician occupies a unique role. He testifies as to what he saw when the worker arrived at the hospital (e.g., protruding femur), as well as giving his expert opinion regarding the percentage of medical disability that injury is likely to cause. The fact that he may testify as an expert on some subjects does not prevent treating him as a fact witness in other areas. *Moses v. McWilliams*, 379 Pa.Super. 150, 549 A.2d 950 (1988), *cert. denied*, 521 Pa. 630, 631, 558 A.2d 532 (1989). Even under the tort system this would open up discovery. *Frantz v. Golebiewski*, 407 So.2d 283 (Fla. Dist.Ct.App.1981).

The differences in tort litigation and workers' compensation are, however, perhaps most significant when considering the proper scope of discovery. Discovery in tort litigation is, of course, governed by the rules of civil procedure which allow a wide variety of discovery devices to be employed almost without limit. *See* SCRA 1986, 1–026 to –036 (Repl.1992); *United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 169–70, 629 P.2d 231, 245–46 (1980), *cert. denied*, 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981). This pattern has been rejected as inappropriate for workers' compensation cases. *Soliz v. Bright Star Enters.*, 104 N.M. 202, 718 P.2d 1350 (Ct. App.), *cert. denied*, 104 N.M. 191, 718 P.2d 701 (1986); N.M. Workers' Compensation Admin., *Miscellaneous Proceedings and Preliminary Questions of Fact*, Rule WCA 91–1, V(A) (May 1991). Rather than giving the parties great latitude in pursuing a vast array of discovery options, the workers' compensation scheme has always required close supervision and tightly de-

---

1. On a subject such as workers' compensation, which is totally a creature of statute, "public policy" is generally enunciated by the legislature. *Williams v. Amax Chem. Corp.*, 104 N.M. 293, 720 P.2d 1234 (1986); *Bottijliso v. Hutchison Fruit Co.*, 96 N.M. 789, 635 P.2d 992 (Ct.App. 1981).

fined limits on discovery so as to facilitate the quick and efficient delivery of benefits. NMSA 1978, § 52–5–7(F) (Cum.Supp.1986); *Soliz v. Bright Star Enters.; Miscellaneous Proceedings, supra,* Rule WCA 91–1, V(G). This difference in philosophy also dictates a different approach to allocating the costs of discovery. *See* NMSA 1978, § 52–3–47(D) (Repl.Pamp.1991) (effective Jan. 1, 1991); *Maschio v. Kaiser Steel Corp.,* 100 N.M. 455, 460–61, 672 P.2d 284, 289–90 (Ct.App.) (Bivins, J., concurring in part, dissenting in part), *cert. denied,* 100 N.M. 439, 671 P.2d 1150 (1983). There is little doubt that informal discovery such as conferences with a treating physician is easier and less costly than depositions. *Doe v. Eli Lilly & Co.,* 99 F.R.D. 126, 128 (D.D.C.1983); *Green v. Bloodsworth,* 501 A.2d 1257, 1258 (Del.Super.Ct.1985).

The majority finds NMSA 1978, Section 52–10–1 (Repl.Pamp.1991), is applicable but not controlling. The majority paraphrases Section 52–10–1(A) as allowing an employer or insurer "to obtain, without restriction, copies of a worker's medical records, bills for services, *and other documents.*" (Emphasis added.) I believe this is a misreading of both the explicit language of Section 52–10–1(A) and the implicit legislative intent behind it. That section actually reads:

A health care provider shall immediately release to a worker, that worker's employer, that employer's insurer, the appropriate peer review organization or the health care selection board all medical records, medical bills *and other information concerning any health care or health care service provided to the worker,* upon either party's written request to the health care provider for that information. Except for those records that are directly related to any injuries or disabilities claimed by a worker for which that worker is receiving benefits from his employer, the request shall be accompanied by a signed authorization for that request by the worker. [Emphasis added.]

There is nothing on the face of this statute which indicates "other information" must be in writing. Can "other information concerning any health care or health

care service provided to the worker" include oral opinions about the necessity of past or future health care or health care service? I believe so. The qualifying phrase used by the legislature, "other information," certainly suggests no requirement that all such information be in writing. The words of a statute must be given their ordinary, everyday meaning, and in the absence of a clear and expressed legislative intention to the contrary, the language of the statute is conclusive. *State ex rel. Reynolds v. Aamodt,* 111 N.M. 4, 800 P.2d 1061 (1990). The ordinary, everyday meaning of "information" is "the communication or reception of knowledge or intelligence." *Webster's New Collegiate Dictionary* 592 (1977).

I believe the majority's reading of Section 52–10–1(A) as though it read "other *written* information concerning any health care or health care service provided to the worker" is also contrary to legislative intent. The legislature has indicated a public policy to encourage inexpensive, informal, and quick discovery of medical evidence in the workers' compensation setting in several other recent provisions of the Act. In workers' compensation, for example, workers have an obligation to submit themselves for physical examination to a physician chosen by the employer. NMSA 1978, §§ 52–1–55, –3–48 (Repl.Pamp.1987). The legislature has also expressed a policy of allowing free access to medical examination both at the time of injury and when, while receiving compensation, the worker undergoes a change in medical condition. *See* NMSA 1978, §§ 52–1–51, –56 (Repl.Pamp.1987). It also seems obvious that the legislature did not contemplate routinely taking depositions of treating physicians when it established a $12,500 limit on attorneys' fees in workers' compensation cases. *See* NMSA 1978, § 52–1–54(G) (Repl.Pamp.1987).

Even before the adoption of Section 52–10–1, the legislature recognized the physician-patient privilege was an unnecessary limitation in the workers' compensation context. At one time the legislature specifically prohibited ex parte contact with a

treating physician without the worker's consent, except where the physician was paid by the employer with the consent of the worker. The statute then governing privileged communications, NMSA 1953, Repl.Vol. 4 (1970), § 20–1–12, contained subparagraph (d) which provided, *inter alia:*

> [N]or shall any doctor or nurse employed by a workmen's compensation claimant be examined relating to a workmen's compensation claim without the consent of his patient as to any communication made by his patient with reference to any physical or supposed physical disease or injury or any knowledge obtained by personal examination of such patient except in instances where the doctor has examined or treated the patient at the expense of the employer, and such payment is consented to by the patient.

Pursuant to the dictates of this statute, the Supreme Court prohibited a district judge from requiring a worker to execute a medical authorization so the employer could receive medical information directly from a physician employed by the worker. *State ex rel. Miller v. Tackett,* 68 N.M. 318, 361 P.2d 724 (1961).

This codification of the physician-patient privilege into the law of workers' compensation was strongly criticized. Patrick W. Hurley, Comment, 7 Nat. Resources J. 442 (1967). In 1973 the New Mexico legislature deleted the statute making the worker's communication to "his doctor" privileged. 1973 N.M. Laws, ch. 223, § 1. The legislature also abolished any such privilege for physicians hired by the employer, and expressed the public policy of New Mexico that "[c]ommunications made by the claimant upon such examination to such physician or physicians shall not be considered privileged." NMSA 1978, § 52–1–51 (Cum. Supp.1986); *Escobedo v. Agriculture Prods. Co.,* 86 N.M. 466, 525 P.2d 393 (Ct.App.1974). Where the legislature has amended a statute to omit certain previous language, it is presumed to have intended to change the law. *State v. Cotton,* 109 N.M. 769, 790 P.2d 1050 (Ct.App.), *cert. denied,* 109 N.M. 751, 790 P.2d 1032 (1990). Even before the enactment of Section 52–10–1, then, it may be fairly inferred that the legislature had expressed a public policy in favor of allowing the informal transmission of medical information to a claimant's employer.

I would submit that the administrative body charged with administering the Act, the Workers' Compensation Division of the Department of Labor, has also adopted regulations under the Act to facilitate informal discovery and resolution of disputes without the necessity of involving attorneys. *See, e.g.,* N.M. Workers' Compensation Admin., *Workers' Compensation Administration Mediation Rules,* Rule WCA 92–2 (Feb. 1992); *Miscellaneous Proceedings, supra,* Rule WCA 91–1 amend. 1, XVII (Feb. 1992) (Ombudsman Rules). The mediation rules in particular appear to contemplate that parties might meet informally with witnesses. Rule WCA 92–2, IV, governs mandatory production and requires an exchange of "[a]ll statements, written or otherwise recorded by any party, unless otherwise privileged." *Id.* IV(F). This provision seems to contemplate the possibility of such informal conferences and impliedly suggests they may be ex parte.

Other jurisdictions have recognized that, because of the unique statutory nature of recovery in workers' compensation claims, discovery must be considered differently than in other litigation. *See Dickerson v. Taylor,* 424 So.2d 291 (La.Ct.App.1982), *cert. denied,* 429 So.2d 156 (La.1983). *But see Linton v. City of Great Falls,* 230 Mont. 122, 749 P.2d 55, 62–63 (1988).[2] Especially in workers' compensation cases, "[d]iscovery is intended to be a mechanism for the ascertainment of truth. It is not a tactical game to be used to obstruct the

---

**2.** The majority cites *Linton* as a case expressing concern that conversations with counsel may improperly influence a plaintiff's physician. If that legal premise is correct, it would seem the fundamental premise of SCRA 1986, 13–207 (Repl.1991), is incorrect. Moreover, the workers' compensation rules expressly prohibit communicating with a health care provider in violation of Section 52–10–1 "with the intent of coercing or improperly influencing any health care provider." *Miscellaneous Proceedings, supra,* Rule WCA 91–1, XI(B)(5).

opposing litigant." *Cook v. Optimum/Ideal Managers, Inc.,* 130 Ill.App.3d 180, 84 Ill.Dec. 933, 940, 473 N.E.2d 334, 341 (1985); *cf.* Hurley, *supra,* 7 Nat. Resources J. at 450–51.

The Iowa Supreme Court recently considered this issue in *Morrison v. Century Engineering,* 434 N.W.2d 874 (Iowa 1989). In *Morrison,* the Iowa Supreme Court granted further review "to consider the claimant's assertion that her attorney must be allowed to be present when the employer's counsel interviewed the claimant's treating physician." *Id.* at 875. The Iowa Supreme Court recognized its prior holding "that a plaintiff in a personal injury action could not be compelled to waive the physician-patient privilege so as to allow defendant's counsel to communicate privately with plaintiff's treating physician." *Id.* at 876 (citing *Roosevelt Hotel Ltd. Partnership v. Sweeney,* 394 N.W.2d 353, 355 (Iowa 1986)). The Iowa court also recognized its continuing concern in the tort context that the physician might disclose "confidential material beyond the scope of the claim being litigated." *Id.* That court pointed out, however, that in workers' compensation proceedings the Iowa legislature had created a statutory waiver (not unlike Section 52–1–51) of any privilege concerning the employee's physical or mental condition relative to the compensation claim. The court then pinpointed why, although it remained convinced that informal contact with a treating physician was not appropriate in the tort context, such a limitation on informal discovery was not consistent with the philosophy of workers' compensation:

> This enlarged waiver is a part of a pattern to foster and encourage a ready access to the information necessary to speedily process workers' compensation claims. Informality is in everyone's interest because in workers' compensation cases, unlike ordinary cases, liability is almost never an issue. The only question is the condition of the injured worker. Because of the narrow scope of inquiry the possibility of revealing extraneous evidence is lower in workers' compensation cases than in ordinary ones.

> The system is designed to be essentially nonadversarial. Whatever its faults, real or imagined, the system presupposes that all workers will benefit more if claims are processed routinely and paid quickly. Most of them are. It would be inimical to this system for the courts to force on the commissioner the rule which Darlene urges.

434 N.W.2d at 877.

The New Mexico legislature has repeatedly expressed the public policy of this state in favor of the quick and efficient administration of workers' compensation claims. I believe the holding of the majority is contrary to this policy, and must therefore respectfully dissent.