This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                              **NO. 29,443**

**JESSICA CARRASCO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G. Shoobridge, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**CASTILLO, Chief Judge.**

Defendant appeals her conviction for child abuse of her one-year-old child, (Child), contrary to NMSA 1978, Section 30-6-1(D)(1) (2009). She argues that the evidence is insufficient to support the verdict and raises several other issues. The State argued at trial, as it does on appeal, that Defendant endangered Child's health by failing to obtain medical treatment for Child's eczema and by exposing Child to filthy living conditions. Applying the standards articulated in *State v. Chavez*, 2009-NMSC-035, 146 N.M. 434, 211 P.3d 891, we conclude that the evidence is insufficient to support the conviction. Because we conclude that the evidence was insufficient, we need not reach Defendant's other issues.

**BACKGROUND**

We review the evidence in the light most favorable to the State, resolving all inferences in favor of the verdict. *State v. Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994). Accordingly, for purposes of our review, we accept the facts as set forth in the State's answer brief.

On October 24, 2007, Rosa Alvarez, an employee of the Children, Youth and Families Department (CYFD), visited Defendant's house to perform a welfare check on Defendant's children. She was accompanied by Officers Kathleen Rix and Walter Coburn of the Hobbs Police Department.

Upon entering, Alvarez and Officer Rix observed that Child's face was covered

with scabs. Officer Rix testified that Child's entire body was covered in scabs and scaly skin. Officer Coburn described Child's skin as flaky, red, and like an open wound. Another CYFD employee, Lisa Navarro, testified that she was summoned to the residence to transport Child and his siblings to CYFD. She similarly observed that Child had a rash all over his body and that his skin was agitated. She further commented that all three children were infested with lice and fleas and claimed that it was the most severe lice infestation she had ever seen. The State presented photographs showing Child had a red rash on his face and other reddish, scaly blotches on other parts of his body.

Yet another CYFD employee, Dana Becker, testified that Child had lice, that his skin was raw, that he had sores all over his face, and that he had a condition on his head called cradle cap. She further testified that a doctor diagnosed Child with eczema and prescribed some creams. She stated that she saw Child a week or two after he had received this treatment and his condition had greatly improved. His skin was no longer raw and was healing; he did not even appear to be the same child. Alvarez testified that after receiving medical treatment, Child looked very good. Navarro similarly testified that when she encountered Child two weeks after their initial interaction at the home, his skin condition had improved so much that he looked like a different child.

The State also introduced evidence that Defendant's house was filthy and in total disarray. Pictures introduced by the State show an unkempt house, dirty dishes, dirty water in the kitchen sink, bugs floating in various items, partly eaten food left out, and piles of clothing and other household items strewn throughout the home.

Defendant called one witness, her mother, who testified that Child suffered from periodic bouts of eczema and was under the care of a skin doctor and on prescription medicine at the time of CYFD's home visit on October 24, 2007. Defendant's mother's claim that Defendant had taken action to address Child's eczema directly conflicts with the State's theory that was accepted below—that Defendant failed to respond to and provide treatment for Child's skin condition. As such, we disregard this aspect of Defendant's mother's testimony. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (noting that, in determining sufficiency, we review the evidence in the light most favorable to the verdict and "disregard all evidence and inferences to the contrary").

**DISCUSSION**

"The sufficiency of the evidence is assessed against the jury instructions because they become the law of the case." *State v. Quiñones*, 2011-NMCA-018, ¶ 38, 149 N.M. 294, 248 P.3d 336. The sufficiency review itself involves a two-step process. *State v. Huber*, 2006-NMCA-087, ¶ 11, 140 N.M. 147, 140 P.3d 1096.

Initially, the evidence is viewed in the light most favorable to the verdict. *Id.* Then the appellate court must make a legal determination of "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Apodaca*, 118 N.M. at 766, 887 P.2d at 760 (internal quotation marks and citation omitted).

The instructions given required the jury to find that Defendant "caused [Child] to be placed in a situation which endangered the life or health of [Child]." We observe that there is a significant discrepancy between the uniform jury instruction, UJI 14-604 NMRA, which tracks Section 30-6-1(D)(1), and the heightened requirements of *Chavez*.

This case was tried in November 2008, before our Supreme Court issued its opinion in *Chavez*—an opinion that clarified the State's evidentiary burden in child abuse cases. *Chavez* recognized that when children are neglected, remedies range from civil intervention by CYFD to criminal sanctions. 2009-NMSC-035, ¶¶ 12-15. Criminal punishment is reserved for the most extreme cases. *See State v. Juan*, 2010-NMSC-041, ¶ 25, 148 N.M. 747, 242 P.3d 314. "[B]y classifying child endangerment as a third-degree felony, our Legislature anticipated that criminal prosecution would be reserved for the most serious occurrences, and not for minor or theoretical dangers." *Chavez*, 2009-NMSC-035, ¶ 16.

To support a criminal conviction, *Chavez* requires proof of a "substantial and foreseeable risk" of harm. *Id.* ¶ 22 (emphasis omitted) (internal quotation marks and citation omitted). We consider the gravity of the threatened harm, *id.* ¶ 23, the seriousness of the threatened injury, *id.* ¶ 24, whether the conduct violates an underlying criminal statute, *id.* ¶ 25, and the likelihood that the harm will occur. *Id.* ¶ 26. These factors are designed to create a boundary between child abuse and "imprudent and possibly negligent conduct" that should not be considered criminal. *Juan*, 2010-NMSC-041, ¶ 25 (internal quotation marks and citation omitted).

With these evidentiary standards in mind, we begin by addressing the State's theory that Defendant endangered Child's health by failing to obtain medical treatment. In support of this theory, the State relied solely on the testimony of lay witnesses—the CYFD workers and the police officers—and photographs demonstrating that Child's skin condition was extensive and unsightly. The State did not call a medical expert to testify about Child's condition or its seriousness. Nor did the State present evidence establishing when this outbreak of eczema started, how long it had been going on, or any expert testimony that would have helped the jury determine those facts. The State similarly failed to present expert testimony as to whether Defendant's failure to treat Child would have resulted in any adverse affects in the future. In short, the record is devoid of any medical testimony about the

6

seriousness of Child's condition, when it began, and how long Defendant had neglected to seek treatment. The only medical information about eczema we have seen in this matter is contained in Defendant's brief in chief that indicates that eczema is a very common skin disease affecting approximately10% of all infants and children and that the cause is not known, but it results from a combination of family heredity and a variety of conditions in everyday life.

The absence of expert testimony here is significant. *See Chavez*, 2009-NMSC-035, ¶¶ 9, 39-40, 53 (emphasizing the state's failure to present expert testimony in reversing the defendant's child endangerment conviction under Section 30-6-1 and noting that "juries deserve more evidentiary assistance" particularly where the issue involves scientific matters). The nature of Child's skin condition, its seriousness, the treatment needed, and the consequences of failing to provide treatment would all require expert testimony to assist the jury in its evaluation of the case. *See Chavez*, 2009-NMSC-035, ¶ 40. Absent such evidence, the jury was left to speculate about these matters. Speculation cannot provide support for a verdict. *See State v. Cotton*, 109 N.M. 769, 773, 790 P.2d 1050, 1054 (Ct. App. 1990).

We conclude that there was insufficient evidence presented to support the child abuse conviction on the theory that Defendant endangered Child's health by failing to obtain medical treatment. We do not mean to minimize Child's discomfort or

Defendant's inadequate child care. We cannot, however, conclude that the State met its evidentiary burden. The significant gaps in the State's proof are determinative. Pictures and lay testimony showing that Child had an awful-looking skin condition—without more—are insufficient under *Chavez* to support Defendant's conviction.

We turn now to the issue of the home conditions. The evidence at trial unquestionably established that Defendant's house was filthy and that housekeeping was sadly neglected. This fact, however, is insufficient in and of itself to support the conviction. The State must do more than present evidence that Defendant's home was disgusting. *Chavez*, 2009-NMSC-035, ¶¶ 35-37 (observing that the conditions within the defendant's home established poverty, filth, and neglect but observing that the state must establish that the risks arising from this home environment were far greater than those in average homes and must connect these conditions to a substantial and foreseeable risk of harm). As our Supreme Court explained, "the critical difference that distinguishes a filthy house from conditions that are criminal is whether those conditions present a truly consequential and foreseeable threat of harm to children." *Id.* ¶ 37.

The State relies on the existence of Child's eczema and contends that the risk of harm to Child from the filthy conditions "was not only likely, but had already

occurred." The problem with this argument is that the State failed to present any evidence, medical or otherwise, that showed that Child's eczema arose from the conditions in which he was living. Any finding by the jury that the filthy living conditions caused Child's eczema would be speculative and unsupported. *See* UJI 14-6006 NMRA (directing that a verdict may not be based on speculation). We are thus left with evidence that Child was subjected to filthy conditions and also suffered from a skin condition the cause of which is unknown. As we said in *Chavez*, the mere fact that Defendant's home was filthy does "not present the sort of serious risk anticipated by our Legislature, at least in the absence of specific evidence to the contrary." 2009-NMSC-035, ¶ 37. We conclude that the fact that Defendant's home was filthy is insufficient to support the verdict.

Defendant's conviction and sentence are reversed.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

9

_____
**TIMOTHY L. GARCIA, Judge**