STRINE, Chief Justice,
with whom DANBERG, Judge joins, Dissenting:
The majority has stated its position well and clearly. I just come to a different conclusion regarding the singular issue before us, which, is whether there was sufficient evidence in the record from which a jury could rationally find that State Farm had acted in bad. faith in addressing Enrique’s claim.[1] In my view, evidence of bad faith sufficient to create a genuine dispute of fact to be decided by a jury existed.
After the physician who State Farm suggested do an IME found that Enrique’s “condition was caused by the September 26, 2005 accident,” State Farm had an adjuster of its own choosing, J.R. Roach, value Enrique’s claim,[2] Roach did so at a range of $62,080. to $94,960. But, State *517 Farm never made Enrique an. offer in that range. Instead, State Farm went to its next “adjuster,” who was the trial attorney for State Farm during the damages case that preceded this bad faith action, and who valued Enrique’s claim at between $45,000 and $50,000. State Farm never made a settlement offer to Enrique above $25,000 until the eve of trial, at which point it offered only $45,000.
Based on these contentions (and details in the record that support them), Enrique argues that State Farm, whose exposure was capped at $100,000, made a calculated decision to not pay her anything near the policy limits. In support of that, she notes that even Roach’s range was below the policy limits, setting up the insurer to seek a discount off the limits. She also notes that State Farm knew she was unemployed, and was therefore under economic pressure to settle. That the trial attorney and ultimate adjuster who gave the later, much lower valuation in the underlying matter had his own reading of the medical record than did Roach does not mean that there is no genuine issue of material fact. Rather, it raises exactly the kind of credibility question that is for a jury to resolve. That is especially true when the insurer continued to raise other speculative issues of causation that it had an opportunity to explore and appears to have failed to do so. Even if one ignores the reality that the jury verdict was six times the final offer and two-and-a-half times the policy limits, the insurer never made an offer at the low range of its own valuation and its final offer was less than half the policy limits. .
Unlike the Majority, I do not find it dispositive that the-rebord suggests that State Farm made some requests for more information to which Enrique arguably did not respond. In the summary judgment context, that one part of the record cannot bear the weight placed upon it, especially because Enrique had cooperated in an IME by a physician of State Farm’s choosing, and because- State Farm never asked for yet another. Nor does State Farm seem to have asked Enrique for a release so that it could procure the records for itself.[3]
Put simply, there is evidence in the record that would support a conclusion that State Farm knew .that Enrique was economically vulnerable and under pressure to settle for that reason, knew that her claim was worth much more than the values they offered her, and.sought to have her accept a compromise that was unfair to her. In reaching the. conclusion that this matter was one for the jury to resolve, I also recognize a reality: Insurers have economic incentives to pressure claimants in immediate need of cash into accepting offers that are tangible but below the policy limits and what is reasonable to compensate the claimant fairly for their injuries, and other losses. Whether *518 such incentives motivated State Farm here is not the question on appeal.
It may very well be that a jury, after hearing testimony from State Farm’s adjustors and Enrique’s expert witness — who has opined that State Farm acted in bad faith[4] — would conclude that State Farm acted in the utmost good faith. But, it may also be that a jury would conclude just the opposite. Because a reasonable jury could find that State Farm acted in bad faith, I respectfully dissent and would reverse the Superior Court’s grant of State Farm’s motion for summary judgment.

. See Am. Ins. Grp. v. Risk Enter. Mgmt. Ltd., 761 A.2d 826, 829 (Del.2000); see also Ebersole v. Lowengrub, 180 A.2d 467, 470 (Del.1962) ("Under no circumstances ... will summary judgment be granted when, from the evidence produced, there is a reasonable indication that a material fact is in dispute. Nor will summary judgment be granted if, upon an examination of all the facts, it seems desirable to inquire thoroughly into them in order to clarify the application of the law to the circumstances." (citation omitted)).

. See App. to Opening Br. at 264 (Letter from Dr. Lawrence Piccioni to J.R. Roach).

. See Green v. Bloodsworth, 501 A.2d 1257, 1260 (Del.Super.1985) ("The ¡Court takes judicial notice of the practice in this jurisdiction that authorizations for release of medical information are routinely provided by plaintiffs in personal injury cases upon request of defense counsel. It is expected that this prac- ■ tice will continue.”); see also 6 Couch on Insurance § 82:18 (3d ed. 2015) (explaining that although "[a]s a general rule, there.is no duty to engage in an independent investigation of the proposed insured's health[,] ... [i]t is common for applications for certain types of insurance to include a provision by which applicants agree to the release of medical information from their treating physicians for a specified period of time”); 9 Am. Jur. Trials 131, § 38, Westlaw (database updated 2016) ("The insurer usually requests, as part of the proofs of claim, the signing of authorizations to hospitals, doctors, and others. Although, ordinarily, there is no legal obligation to supply these; authorizations, tfiey should be given as a matter of good tactics and good will.”).

. See App. to Opening Br. at 244-46 (Deposition of Ivan E. Cohen, Apr. 28, 2015).