# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STACIA VICK and<br>CHADWICK VICK,<br><br>     Plaintiffs,<br><br>v.<br><br>DR. NASREEN KHAN and KHAN<br>OBSTETRICS AND GYNECOLOGY<br>ASSOCIATES, P.A.,<br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. K17C-09-007 NEP<br>In and for Kent County |

Submitted: October 25, 2019
Decided: November 15, 2019

## MEMORANDUM OPINION AND ORDER

Upon Former Defendants Bayhealth, Inc., Bayhealth Medical Center, Inc., and Kent General Hospital's Motion in Limine to Preclude Any Evidence Regarding Negligent Supervision and Training
**DENIED AS MOOT**

Upon Former Defendants Bayhealth, Inc., Bayhealth Medical Center, Inc., and Kent General Hospital's Motion in Limine to Preclude Expert Testimony from David Berry, M.D., Regarding Medical Ethics
**DENIED AS MOOT**

Upon Defendants Nasreen Khan, DO, and Khan Obstetrics and Gynecology Associates, PA's (Improperly named as Khan and Associates, PA), Motion in Limine to Preclude Testimony and Evidence Unsupported by a Medical Expert Causation Opinion
**GRANTED**

Upon Plaintiffs' Motion to Preclude Bayhealth from Treating Danielle Teal as a Client Instead of a Witness
**DENIED AS MOOT**

Upon Plaintiffs' Motion to Limit the Number of Defendants' Peremptory Challenges
**DENIED AS MOOT**

Upon Plaintiffs' Motion to Preclude Evidence of Plaintiff Stacia Vick's Mental State or Incompetency
**DENIED AS MOOT**

Upon Plaintiffs' Motion to Preclude Evidence that Plaintiff Stacia Vick Assumed the Risk or Gave Implied Consent for the Hysterectomy
**DENIED AS MOOT**

Upon Plaintiffs' Motion to Preclude Evidence Regarding Plaintiff Stacia Vick's Immigration Status and Employment Status, and Either Plaintiff's Receipt of Government Benefits
**DENIED AS MOOT**

Upon Plaintiffs' Motion to Limit the Number of Defendants' Experts to One Each
**DENIED**

Upon Plaintiffs' Motion to Preclude Evidence Regarding the Care and Treatment of Plaintiffs' Minor Child
**DENIED**

Upon Plaintiffs' Motion to Preclude Questioning Regarding Privileged Communications Between Plaintiffs
**DEFERRED**

Upon Plaintiffs' Daubert Motion and Motion in Limine Regarding David Schwartz, M.D.
**DENIED**

Upon Plaintiffs' Daubert Motion and Motion in Limine Regarding Daniel Small, M.D.
**DENIED**

Stacia Vick and Chadwick Vick, Plaintiffs, *Pro se.*

Thomas J. Marcoz, Jr., Esquire and Catherine M. Cramer, Esquire, Marshall, Dennehey, Warner, Coleman & Goggin, for Defendants Nasreen Khan, DO and Khan Obstetrics and Gynecology Associates, PA.

**Primos, J.**

2

Before the Court are several motions *in limine* including (1) a motion to preclude any evidence regarding negligent supervision and training filed by Defendants Bayhealth Inc., Bayhealth Medical Center, Inc., and Kent General Hospital (hereinafter collectively "Bayhealth"); (2) a motion to preclude expert testimony from Dr. Berry regarding the issue of medical ethics filed by Bayhealth and joined in by Defendants Nasreen Khan, DO, and Khan Obstetrics and Gynecology Associates, PA (hereinafter collectively the "Khan Defendants"); (3) a motion to preclude testimony and evidence unsupported by a medical expert causation opinion filed by the Khan Defendants; and ten (10) motions *in limine* filed by Plaintiffs Stacia Vick and Chadwick Vick (hereinafter "Plaintiffs"), which will be discussed in more detail below.

This opinion sets forth the Court's decision on the motions following oral argument on October 25, 2019. The Court refers the parties to its May 17, 2019, Opinion and Order[1] on the dispositive motions and motions to strike for a recitation of the facts and procedural history. The Court also refers the parties to that decision, as Bayhealth was dismissed from the ensuing litigation upon a finding by this Court that Plaintiffs are unable to demonstrate that Dr. Khan was acting as an agent or apparent agent of Bayhealth, or advance any medical malpractice claims against Bayhealth. Therefore, any motions directed to Bayhealth, including Plaintiffs' motion to preclude Bayhealth from treating Danielle Teal as a client, or any motions filed by Bayhealth and not joined in by the Khan Defendants, such as Bayhealth's motion to preclude evidence regarding negligent supervision or training, shall be denied as moot.

The Court will begin its analysis by examining the motions *in limine* filed by Bayhealth and the Khan Defendants. The Court will then address Plaintiffs' various

---

[1] *Vick v. Khan*, 2019 WL 2177114 (Del. Super. May 17, 2019).

motions *in limine* beginning with the motions *in limine* that are now moot followed by Plaintiffs' remaining motions.

### A. Bayhealth's Motions *in Limine*

Bayhealth has filed two motions *in limine*, (1) to preclude any evidence regarding negligent supervision and training, and (2) to preclude expert testimony from Dr. Berry regarding the issue of medical ethics. Both of these motions should be denied as moot.

Bayhealth's motion regarding negligent supervision and training, as noted *supra*, will be denied as moot because Bayhealth is no longer a party.

As to Bayhealth's motion to preclude expert testimony from Dr. Berry regarding the issue of medical ethics, in which the Khan Defendants joined, any potential issue regarding medical ethics pertains to Plaintiffs' original claim for lack of informed consent. When Dr. Berry himself addressed the issue of medical ethics in his deposition, he framed it in terms of Dr. Khan's alleged failure to obtain Ms. Vick's consent before performing the hysterectomy.[2] Dr. Berry also stated that he was "probably not the expert on that particular topic,"[3] thus indicating that he would likely not have qualified as an expert in the field of medical ethics. As the Court has entered summary judgment on the informed consent claim, the motion is denied as moot.

### B. The Khan Defendants' Motion *in Limine*

The Khan Defendants have filed a motion to preclude any testimony and evidence unsupported by a medical expert, specifically regarding Ms. Vick's incontinence or bowels. The Khan Defendants argue that in order for Plaintiffs to support a claim for medical negligence relating to Ms. Vick's bowel incontinence, dysfunction, and injury, Plaintiffs are required to present expert medical testimony that Dr. Khan deviated from the standard of care in a manner that proximately caused

---

[2] Dr. Berry Dep. 13:16-25; 14:1-2.
[3] *Id.* at 85:25-86:1.

4

those conditions. As Plaintiffs have failed to do so, the Khan Defendants' motion will be granted.

On May 7, 2018, Plaintiff provided answers to the Khan Defendants' written discovery requests. Plaintiffs stated that Ms. Vick could not control her bowels following the performance of the hysterectomy performed by Dr. Khan, and that Ms. Vick still did not have full control over her bowels. On September 5, 2018, Ms. Vick was deposed and testified that she suffered from incontinence and inability to control her bowels and alleged that this was a result of negligence on the part of Dr. Khan.

The Delaware Medical Malpractice Act requires that a plaintiff's claim for medical malpractice be supported by expert medical testimony. 18 *Del. C.* § 6853(e) provides that "[n]o liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care in the specific circumstances of the case and as to the causation of the alleged personal injury or death. . . ."[4] Thus, Section 6853 specifically mandates that before liability can be found in a medical malpractice action, the plaintiff bears the initial burden of presenting expert medical testimony as to (1) the applicable standard of care; (2) the alleged deviation from that standard; and (3) the causal link

---

[4] 18 *Del. C.* § 6853(e) provides three exceptions to the requirement that expert testimony must support a claim for medical malpractice: "(1) [a] foreign object was unintentionally left within the body of the patient following surgery; (2) [a]n explosion or fire originating in a substance used in treatment occurred in the course of treatment; or (3) [a] surgical procedure was performed on the wrong patient or the wrong organ, limb or part of the patient's body." None of these exceptions are applicable to the present case. Therefore, Ms. Vick's claim for medical malpractice must be supported by expert medical testimony. *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991) ("in the absence of [the exceptions listed in 18 *Del. C.* § 6853(e)] . . . a plaintiff's claim for medical malpractice *must* be supported by expert medical testimony") (emphasis in original).

between that deviation and the alleged injury.[5]  Additionally, an expert must testify to a reasonable medical probability as to each of the above elements.[6]

As previously held in the Court's May 17, 2019, Opinion and Order, Plaintiffs have failed to establish a *prima facie* case of medical negligence as to the performance of the hysterectomy.  Moreover, Plaintiffs have not provided any evidence or testimony regarding Ms. Vick's incontinence, bowel injury, or bowel dysfunction, including her claims that her bowel was injured during the hysterectomy or that she had incontinence or bowel dysfunction related to the hysterectomy.  In fact, Plaintiff's sole expert, Dr. Berry, has stated that he will not be offering any testimony that Ms. Vick had any incontinence or bowel dysfunction related to the hysterectomy:

> Q: Now, a hysterectomy does not involve surgery on the bowel, does it?
> A: Only inadvertently as a complication you could injure the bowel, but there's no intention and no goal to – it's actually the goal to keep the bowel out of your operative field.
>
> Q: . . . [H]ave you seen any indication that the bowel was injured during the course of Dr. Khan's procedure?
> A: No.
>
> Q: Are you gonna be offering any opinion at trial that Ms. Vick has incontinence related to the hysterectomy?
> A: No.
>
> Q: Are you gonna be offering any opinion at trial that Ms. Vick has any type of bowel dysfunction related to the hysterectomy?
> A: Not that I've been provided any information for . . . .[7]

---

[5]  18 *Del. C.* § 6853; *Russell v. Kanaga*, 571 A.2d 724, 732 (Del. Super. 1990); *O'Donald v. McConnell*, 858 A.2d 960, at *2 (Del. 2004) (TABLE).

[6]  *See Floray v. State*, 720 A.2d 1132, 1136 (Del. 1998) ("Generally when an expert offers a medical opinion it should be stated in terms of 'a reasonable medical probability' or 'a reasonable medical certainty.'") (citing *Oxendine v. State*, 528 A.2d 870, 873 (Del. 1987)).

[7]  Dr. Berry Dep. 87:4-24.

Here, it is clear that Dr. Berry will not be providing any testimony as to the three elements of Section 6853 above. Moreover, Plaintiffs themselves admitted at the oral arguments held on March 15, 2019, that they have no evidence of the hysterectomy's being performed negligently and that their argument pertains to a lack of consent. Therefore, as no party has asserted any criticism of the manner in which Dr. Khan performed the hysterectomy, and no evidence or testimony has been provided to establish that Ms. Vick's incontinence, bowel injury or bowel dysfunction are related to the performance of the hysterectomy, the Khan Defendants' motion is granted.

The same reasoning would apply to any potential testimony by Dr. Berry regarding other physical conditions experienced by Ms. Vick allegedly resulting from the Khan Defendants' negligence. In his deposition, Dr. Berry conceded that he would be offering no testimony supporting a causal relation between the alleged negligence and certain other potential physical conditions.[8]

In short, Dr. Berry will be precluded at trial from offering testimony regarding a causal relation between the alleged negligence and any of these physical conditions, or regarding any physical condition that he has not previously indicated, in his expert report or his deposition, to have been causally related to the alleged negligence.

## C. Plaintiffs' Motions *in Limine*

Plaintiffs have filed ten motions *in limine*, which include various arguments against the Khan Defendants and Bayhealth. As stated above, any motions as to Bayhealth are now moot following this Court's decision on the dispositive motions. Certain others of Plaintiffs' motions are moot for different reasons. As to the motions involving the Khan Defendants, the Khan Defendants have opposed each of Plaintiffs' motions based on the untimeliness of Plaintiffs' filings. The Court

---

[8] *Id.* at 87:25-88:18.

7

refers the parties to its decision on the dispositive motions and motions to strike, which denied the Khan Defendants' motion to strike Plaintiffs' motions as untimely, finding that Plaintiffs demonstrated excusable neglect and that the Khan Defendants failed to show how they had been unduly prejudiced by the late submissions. The Court will first dispose of Plaintiffs' motions that are denied as moot before addressing the other motions *in limine*.

### 1. Plaintiffs' Motion to Preclude Bayhealth from Treating Danielle Teal as a Client Instead of a Witness

Plaintiffs have filed a motion *in limine* to preclude Bayhealth from treating Danielle Teal as a client instead of as a witness. The Court finds this motion to be moot, and therefore denies it, because Bayhealth is no longer a party to the action.[9]

### 2. Plaintiffs' Motion to Limit the Number of Defendants' Peremptory Challenges

Plaintiffs filed this motion seeking to limit the number of peremptory challenges for Defendants or, in the alternative, increase the number of peremptory challenges for Plaintiffs. Plaintiffs argue that all Defendants should be treated as one party for the purposes of using their peremptory challenges, as it would create unfair prejudice to allow Defendants to have more peremptory challenges than Plaintiffs simply because they are multiple parties.

As a general rule, Delaware Rules of Civil Procedure 47(c) states that "[e]ach party shall be entitled to 3 peremptory challenges. Several defendants or several plaintiffs may be considered as a single party for the purposes of making challenges, or the court may allow additional peremptory challenges and permit them to be exercised separately or jointly."

---

[9] As noted by counsel for the Khan Defendants at oral argument on the motions *in limine*, Ms. Teal will be called as a witness by the Khan Defendants at trial, and Bayhealth's counsel will presumably be present in the courtroom as counsel for Ms. Teal but will not otherwise be participating in the proceedings.

In this case, Plaintiffs' motion is moot, as Bayhealth is no longer a party to these proceedings and, thus, not entitled to any peremptory challenges. Here, the Khan Defendants are not seeking separate peremptory challenges for each remaining Defendant, namely Defendants Nasreen Khan, DO, and Khan Obstetrics and Gynecology Associates, PA. Rather, the Khan Defendants have argued in their written response that the parties should be grouped in the manner in which the case has been litigated, with the Khan Defendants receiving three peremptory challenges and Bayhealth receiving three peremptory challenges. However, as all claims against Bayhealth have been dismissed pursuant to this Court's May 17, 2019, Opinion and Order, the Court finds this issue to be moot. The Khan Defendants, as one party, and Plaintiffs, as one party, shall each receive three peremptory challenges.

### 3. Plaintiffs' Motion to Preclude Evidence of Plaintiff Stacia Vick's Mental State or Incompetency

Plaintiffs have filed a motion *in limine* to preclude the Khan Defendants and their experts from suggesting that Ms. Vick was incompetent during the course of the surgical procedures or from attacking Ms. Vick's mental state. Plaintiffs argue that allowing such evidence or testimony would create unfair prejudice and confuse and mislead the jury, particularly as neither Defendants nor Defendants' experts are mental health experts, and are therefore unqualified to testify as to issues dealing with competency.

This Court previously granted summary judgment for the Khan Defendants on the issue of informed consent. Ms. Vick's mental status or competency goes to this same issue of consent and whether she was able to properly rescind consent for the performance of the hysterectomy. The Khan Defendants conceded at oral argument that they will not be offering evidence regarding Ms. Vick's mental state or incompetency, as the issue of consent is no longer part of the case. Therefore, Plaintiffs' motion is moot and is denied as such.

### 4. Plaintiffs' Motion to Preclude Evidence that Plaintiff Stacia Vick Assumed the Risk or Gave Implied Consent for the Hysterectomy

For the same reasons as stated above, this motion is denied as moot. Plaintiffs filed this motion arguing that Defendants and Defendants' expert witnesses should be precluded from presenting any evidence or testimony that Ms. Vick consented in any way to the hysterectomy.

This Court previously held that Delaware law precludes a plaintiff from prevailing on an informed consent claim where the treatment provided arose in the context of an emergency, and that there is no dispute among the parties that the hysterectomy was an emergency treatment. Thus, as judgment as a matter of law was granted in favor of the Khan Defendants on the issue of informed consent, evidence surrounding Ms. Vick's providing or not providing consent is irrelevant, and this motion will be denied as moot.

### 5. Plaintiffs' Motion to Preclude Evidence Regarding Plaintiff Stacia Vick's Immigration Status and Employment Status, and Either Plaintiff's Receipt of Government Benefits

The Court will next examine Plaintiffs' motion to preclude evidence regarding Plaintiff Stacia Vick's immigration status, employment status, and either Plaintiff's receipt of any state or government benefits. Plaintiffs argue that immigration status is not relevant to the case at hand and may unfairly prejudice a jury. Moreover, Plaintiffs argue that Ms. Vick's employment status, her lack of employment, and the fact that Plaintiffs were receiving government assistance and benefits may also unfairly prejudice the jury.

First, with regard to Plaintiffs' immigration and employment status, the Court finds these issues to be moot. The Khan Defendants have stated in their response to Plaintiffs' motion that they do not intend to introduce any evidence regarding Plaintiffs' immigration or employment status unless the issue is raised by Plaintiffs. If Plaintiffs "open the door" to this evidence, then the Khan Defendants are certainly

10

entitled to cross-examine or put forth rebuttal testimony. However, as the parties do not disagree as to the relevancy, or lack thereof, of these two issues, the Court finds the motion as to these two claims to be moot.

As to Plaintiffs' motion to preclude evidence regarding Plaintiffs' receipt of government benefits, this issue is also moot. Plaintiffs conceded at oral argument that they will not be presenting any medical bills as evidence at trial, and the Khan Defendants in turn represented that there will be no need for them to present evidence relating to Ms. Vick's receipt of Medicaid benefits. Therefore, the motion is denied as moot.

### 6. Plaintiffs' Motion to Limit the Number of Defendants' Experts to One Each

Plaintiffs have requested that this Court limit the number of Defendants' experts to one each. Plaintiffs argue that Defendants do not need multiple experts to testify on the same issues, and that allowing such testimony of multiple experts in the same field and with the same opinions will confuse the jury and constitutes cumulative evidence. Although not explicitly stated in Plaintiffs' motion, Plaintiffs are essentially making an argument under Delaware Rule of Evidence 403, namely that the testimony of multiple experts in the same field and with the same opinions would have limited probative value, and that such probative value is substantially outweighed by considerations of confusion and delay.

As Bayhealth is no longer a party, Plaintiffs' motion is, of course, moot as to its experts. The Khan Defendants, for their part, argue that Plaintiffs have put forth various allegations in their Complaint and that multiple experts with different specialties are needed to testify due to the complexities of the case. The Khan Defendants' experts all have different specialties and backgrounds and discuss different issues pertinent to the case. Thus, multiple experts are actually needed to *avoid* confusing the jury. For example, the Khan Defendants proffer that (1) Dr. Small will testify as to standard of care issues; (2) Dr. Gerson will testify as a

11

maternal and fetal expert and as to prenatal issues, specifically relating to the impact of Ms. Vick's pre-existing uterine fibroids; (3) Dr. Schwartz will testify as a pathology and morbidity expert and as to the location, size, and characteristics of Ms. Vick's uterine fibroids and how they played a role in her postpartum hemorrhage; and (4) Dr. Kiss will testify as a hematologist as to Ms. Vick's massive blood loss and the impact of that blood loss on her prognosis.

Delaware Rule of Evidence 403 states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." In this case, the Court finds that the issues presented are complex and that expert testimony from multiple experts with different specialties and testimony as to different aspects of Plaintiffs' case would *assist* the jury. Each of the experts brings a "unique educational background"[10] and knowledge from a different specialty that is pertinent to the case and will help the jury in understanding the various issues. Moreover, as this Court held in *Galmore v. St. Francis Hospital*,[11] "[a]lthough the testimony of each of these experts may be somewhat overlapping or cumulative, this does not necessarily render the testimony of any given one of these experts inadmissible. Further, this Court should limit a party's presentation of evidence on the ground that it is cumulative 'only sparingly.'"[12]

In *Galmore*, the Court found that "[g]iven the inherent complexity of Plaintiff's claims, Defendants' expert's anticipated testimony will be material to the defense case and does not appear to be inappropriately cumulative."[13] This Court, likewise, has been presented with several complex medical issues and, thus, finds

---

[10] *See DeBussy v. Graybeal*, 2016 WL 8379211, at *2 (Del. Super. Dec. 2, 2016) ("[I]t has been held that an expert's 'unique educational background' can afford him or her with 'a different perspective that is potentially helpful to the court.'") (citation omitted).

[11] 2011 WL 2083888 (Del. Super. Apr. 27, 2011).

[12] *Id.*, at *2.

[13] *Id.*

12

that multiple expert witnesses may be needed to testify as to the various issues. Plaintiffs have put forth several claims and allegations, but have decided to rely on the opinions and testimony of one expert, Dr. Berry. It would be unfairly prejudicial to hinder the Khan Defendants in the presentation of their defense of these claims simply because Plaintiffs chose to retain only one expert. Therefore, Plaintiffs' motion *in limine* to limit the number of the Khan Defendants' experts to one is denied.

### 7. Plaintiffs' Motion to Preclude Evidence Regarding the Care and Treatment of Their Minor Child

Plaintiffs filed this motion seeking to preclude any mention of the care, treatment or wellbeing of their minor child, Josiah Vick (hereinafter "Josiah"), from his birth to the conclusion of this litigation. Plaintiffs have argued that Josiah is not a party to these proceedings, and that any mention of him would violate his privacy rights and would not preserve his future rights against Defendants.

The Court is puzzled by Plaintiffs' arguments, particularly as Plaintiffs have failed to put forth any explanation regarding potential future claims of Josiah, or any evidence as to how his privacy rights would be violated by discussion of his care, treatment, or wellbeing. Plaintiffs have not argued that their son suffered any injuries during or as a result of his birth, nor does this Court see how Josiah's right to privacy or future rights would be impacted by discussing such matters.

Plaintiffs have made various allegations of negligence – such as not following the birth plan that Ms. Vick wanted and misappropriating Josiah's umbilical cord – to which the care, treatment, and wellbeing of Josiah are relevant. Plaintiffs allege that Dr. Khan violated Ms. Vick's birth plan by cutting Josiah's umbilical cord instead of allowing Mr. Vick to cut the cord, and by giving Josiah to the NICU staff instead of allowing immediate skin-to-skin contact as Ms. Vick requested. The Khan Defendants claim that deviation from the birth plan was necessary due to medical concerns relating to Josiah's condition. As these claims relate to the care, treatment,

13

and wellbeing of Josiah, any evidence as to why Dr. Khan deviated from the birth plan, as well as any evidence as to why Dr. Khan took a piece of Josiah's umbilical cord, are relevant to Plaintiffs' allegations and necessary for the Khan Defendants to defend against such claims. Therefore, Plaintiffs' motion is denied.[14]

### 8. Plaintiffs' Motion to Preclude Questioning Regarding Privileged Communications Between Plaintiffs

Plaintiffs seek to preclude Defendants from asking questions about any confidential communications between Plaintiffs. Plaintiffs assert that they are married and, as such, are asserting their spousal privilege to preclude questioning on any discussions that they have had in regard to this litigation.

The Khan Defendants, in response, assert that Plaintiffs have failed to lay the proper foundation to assert spousal privilege, as Plaintiffs have not provided any proof, such as a formal marriage certificate, to indicate that they are indeed married and were married at the time of the communications in question. Additionally, the Khan Defendants argue that even if Plaintiffs had laid the proper foundation for this privilege, the spousal privilege would nonetheless be inapplicable, as Plaintiffs have waived their privilege via the so-called "at issue" exception and through disclosure to a third party. For the following reasons, Plaintiffs' motion should be deferred.

Spousal privilege in Delaware is governed by Delaware Rule of Evidence 504, which states that "[a]n individual has a privilege to refuse to testify and to prevent the individual's spouse from testifying as to any confidential communication between the individual and the spouse during their marriage."[15] Spousal privilege only applies to "confidential communications," which are those "communication(s)

---

[14] As the Court has explained, discussion of Josiah's care and treatment were put at issue by Plaintiffs due to their claims. However, as reference to Josiah by name is not necessary to such discussions, the Court will direct the parties to refer to Josiah as "baby Vick" during the trial and to redact his name from any documentary exhibits.

[15] D.R.E. 504(c).

that an individual made privately to the individual's spouse that was not intended for disclosure to any other person."[16]

Disclosure of an otherwise privileged communication to a third-party constitutes a waiver of privilege, even if the communication would otherwise constitute a privileged marital communication.[17] The Court notes that any communications that were not made privately between Plaintiffs, such as any communications made in front of Dr. Khan or other medical staff, are not subject to the spousal privilege.

Here, Plaintiffs have failed to lay the proper foundation to assert the spousal privilege. However, to bar Plaintiffs from utilizing their right to protect privileged confidential communications would unfairly prejudice the Plaintiffs. Therefore, to the extent that Plaintiffs have not provided this Court with any formal documentation regarding their marriage, they shall be required to submit such documentation along with the pretrial stipulation.

Assuming that Plaintiffs provide such documentation, the Khan Defendants argue that when a loss of consortium claim is asserted, as in this case, the party asserting the claim waives his or her spousal privilege regarding discovery of those communications, including any communications as to the health of the marriage. The Khan Defendants argue that Plaintiffs may not simultaneously assert a claim that places otherwise privileged communications "at issue" in this litigation, while then attempting to conceal those communications.

Delaware has incorporated the common law rule of spousal privilege into Rule 504. However, Delaware has not incorporated one of the common law exceptions to this rule – waiver of the privilege upon filing a loss of consortium claim – into the Rule, nor has it developed this exception through common law.

---

[16] D.R.E. 504(a)(1).
[17] *Weedon v. State*, 647 A.2d 1078 (Del. 1994).

15

In contrast, federal law does not have a rule of evidence governing spousal privilege, and therefore the privilege is controlled by federal common law. Therefore, the federal cases that the Khan Defendants cite in their Response are neither applicable nor persuasive.[18]

Moreover, the Delaware cases that the Khan Defendants cite in their Response are not persuasive because they address different privileges and are factually distinct from the case at bar.[19] This Court in *Green* cited Delaware Rule of Evidence 503(d)(3), which specifically provides that the physician-patient privilege is waived where a claim is filed putting the plaintiff's condition at issue.[20] There is no corresponding provision in Rule 504. Similarly, in *Sokol*, the Court of Chancery cited numerous prior decisions of the Court of Chancery holding that the attorney-client privilege is waived when the attorney-client communications are at issue in the litigation.[21] The Khan Defendants conceded at oral argument that there is no Delaware authority holding that the spousal privilege is waived where one of the spouses has filed a loss of consortium claim. Neither will this Court make such a ruling.

Therefore, the Court will not force the disclosure of private communications made between Plaintiffs, regardless of the nature of such communications, simply because Mr. Vick is bringing a claim for loss of consortium. As stated previously, however, the Court's decision on Plaintiffs' motion will be deferred to allow Plaintiffs to filed documentation verifying their marriage along with the pretrial stipulation.

---

[18] *Ledbetter v. Wal-Mart Stores, Inc.*, 2009 WL 1067018, at *1 (D.Colo. Apr. 21, 2009); *Laudicina v. City of Crystal Lake*, 238 F.R.D. 510, 516 (N.D.Ill. 2018); *Powell v. United Parcel Serv., Inc.*, 2010 WL 1490029 (S.D.Ind. Apr. 13, 2010).

[19] *Green v. Bloodsworth*, 501 A.2d 1257, 1259 (Del. Super. 1985); *Sokol Holdings, Inc. v. Dorsey & Whitney, LLP*, 2009 WL 2501542, at *7 (Del. Ch. Aug. 5, 2009).

[20] 501 A.2d at 1258.

[21] 2009 WL 2501542, at *6 n. 29.

## 9. Plaintiffs' Motions to Preclude or Limit Testimony of Dr. Schwartz and Dr. Small

Lastly, the Court will examine Plaintiffs' Daubert motions and motions *in limine* to preclude or limit the testimony of Dr. David Schwartz and Dr. Daniel Small, two of the Khan Defendants' experts. The Court will address these motions together, as Plaintiffs and the Khan Defendants make largely the same arguments regarding each motion.

Essentially, Plaintiffs are requesting that this Court act as a "gatekeeper" and exclude the opinions and testimony of Dr. Schwartz and Dr. Small from these proceedings. Plaintiffs assert that Dr. Schwartz is not an OBGYN doctor and is thus unqualified to testify as to obstetrics or gynecology or any standard of care issues. Moreover, Plaintiffs claim that the basis for Dr. Schwartz's opinions is factually unsound and that he does not meet the minimum standards for admission as an expert. Plaintiffs also argue that Dr. Schwartz's testimony should be excluded because his methodology was deficient, since he based his opinions upon an examination of purported slides of Ms. Vick's uterus, but her uterus was allegedly destroyed. In the alternative, Plaintiffs argue that Dr. Schwartz's testimony should be limited to the area of pathology.

As to Dr. Small, Plaintiffs assert that he also does not meet the requirements to be considered an expert. Plaintiffs argue that Dr. Small has adopted the "any reasonable patient" standard, which is an incorrect standard. Plaintiffs argue that this standard implies to a jury that Ms. Vick was being unreasonable in her desire to avoid a hysterectomy. Moreover, Plaintiffs assert that this testimony may unfairly prejudice and mislead a jury, as it insinuates that Plaintiffs' thoughts and wishes were "erroneous," "distorted," "unreasonable," and "egregious."

The Delaware Supreme Court has identified five factors that a court must consider when determining the admissibility of expert evidence. These factors

include (1) whether the witness is qualified as an expert by knowledge, skill, experience, training or education; (2) whether the evidence offered is otherwise admissible, relevant and reliable; (3) whether the expert's opinion is based upon information reasonably relied upon by experts in the field; (4) whether the specialized knowledge being offered will assist the trier of fact to understand the evidence or determine a fact in issue; and (5) whether the expert testimony will create unfair prejudice, confuse the issues or mislead the jury.[22]

Looking first to Dr. Schwartz, the Court finds that Plaintiffs' allegations regarding Dr. Schwartz's qualifications are largely unfounded and that Dr. Schwartz clearly meets the five factors above. Plaintiffs argue that Dr. Schwartz is not qualified to offer testimony as to the standard of care or matters dealing with obstetrics or gynecology as he is not an OBGYN. However, the Khan Defendants have indicated that Dr. Schwartz will not be offering any such testimony. Rather, Dr. Schwartz is Board-Certified in Anatomic Pathology, is currently working as a pathologist at the Medical College of Georgia, and will be called to testify as to his pathology findings. The Khan Defendants assert that Dr. Schwartz's testimony will likely include discussing issues such as the location of Ms. Vick's uterine fibroids, the impact that the fibroids had on Ms. Vick's uterus and post-partum hemorrhaging, the cause of Ms. Vick's hemorrhage, the pathology of her uterine hemorrhage, and Ms. Vick's increased risk of death due to the hemorrhage. None of these matters pertain to any standard of care issue or issues within obstetrics or gynecology. Thus, to the extent that Plaintiffs seek to preclude Dr. Schwartz from testifying because of these concerns, the Court finds this argument to be moot. Moreover, Plaintiffs have conceded in their motion that Dr. Schwartz is an expert in pathology.[23]

---

[22] *Conway v. Bayhealth Medical Center*, 2001 WL 337228, at *1 (Del. Super. Mar. 26, 2001) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1991)).
[23] "While a qualified expert in Pathology, it is clear from Dr. Schwartz's CV that he has never practiced as a doctor of Obstetrics and Gynecology. . . ."

18

To the extent that Plaintiffs argue that Dr. Schwartz's opinion is based upon a deficient "methodology," the Court finds no merit in such an assertion. The Court finds, to the contrary, that Dr. Schwartz's opinions are based upon information reasonably relied upon by experts in his field. To the extent that there is some factual dispute regarding whether slides examined by Dr. Schwartz were depictions of Ms. Vick's uterus, Plaintiffs may present any competent evidence on this issue at trial. The Court, however, finds no valid basis to preclude Dr. Schwartz's testimony at this time, and Plaintiffs' motion to preclude his testimony will be denied.

As to Dr. Small, the Court, likewise, finds Plaintiffs' motion to be without merit. Any contentions regarding Dr. Small's use of the "any reasonable patient" standard have been rendered moot by the Court's dismissal of Plaintiff's informed consent claims. The Khan Defendants confirmed at oral argument that they will elicit no such testimony from Dr. Small.

Regarding Dr. Small's qualifications, Dr. Small is Board-Certified in Obstetrics and Gynecology and currently works as an obstetrician and gynecologist at Capital Health Medical Center, where he has practiced since 1998. He is the Chief of the Division of Gynecology and the Director of Gynecologic Minimally Invasive Surgery. In this case, Dr. Small has indicated that he has reviewed the pertinent case documents and medical records and provided his expert disclosures and testimony based upon his education, experience, and training. The Court finds Plaintiffs' allegations that Dr. Small is not qualified to discuss standard of care and causation issues to be without merit and believes that his opinion will assist the trier of fact. Therefore, Plaintiffs' motion to exclude the testimony of Dr. Small is also denied.

**WHEREFORE**, for the foregoing reasons, Bayhealth's (1) motion to preclude evidence regarding negligent supervision and training and (2) motion to preclude expert testimony from Dr. Berry regarding the issue of medical ethics are both **DENIED AS MOOT**; (3) the Khan Defendants' motion to preclude testimony

19

and evidence unsupported by a medical expert causation opinion is **GRANTED**; Plaintiffs' (4) motion to preclude Bayhealth from treating Danielle Teal as a client, (5) motion to limit the number of Defendants' peremptory challenges, (6) motion to preclude evidence of Plaintiff Stacia Vick's mental state or incompetency, (7) motion to preclude evidence that Plaintiff Stacia Vick assumed the risk or implied consent for the hysterectomy, and (8) motion to preclude evidence regarding Plaintiff Stacia Vick's immigration status and work status, and either Plaintiff's receipt of government benefits are all **DENIED AS MOOT**; Plaintiffs' (9) motion to limit the number of Defendants' experts to one each, (10) motion to preclude evidence regarding the care and treatment of Plaintiffs' minor child, (11) motion to exclude or limit the testimony of Dr. Schwartz, and (12) motion to exclude the testimony of Dr. Small are all **DENIED**; and (13) Plaintiffs' motion to preclude questioning regarding privileged communications between Plaintiffs is **DEFERRED**.

    **IT IS SO ORDERED.**

/s/ Noel Eason Primos
Judge

NEP/wjs
*Via File & ServeXpress, Email and U.S. Mail*
oc:    Prothonotary
cc:    Stacia Vick and Chadwick Vick
       Thomas J. Marcoz, Jr., Esquire
       Catherine M. Cramer, Esquire